264 So.2d 560

**Allen McGHEE**

v.

**STATE.**

3 Div. 149.

Court of Criminal Appeals of Alabama.

June 27, 1972.

Ball, Ball & Matthews, and Tabor R. Novak, Jr., Montgomery, for appellant.

William J. Baxley, Atty. Gen., and Sarah V. Maddox, Asst. Atty. Gen., for the State.

**TYSON, Judge.**

The appellant was indicted for grand larceny, and following jury trial and verdict of guilty as charged, judgment fixed punishment at two years imprisonment in the penitentiary.

Appellant's counsel filed pretrial motion to suppress or exclude the testimony of Mrs. Sandra Stone whose in-court identification, appellant contends, was impermissibly tainted by the out-of-court showing of photographs on the date of the alleged larceny. Such photographic identification is averred to be so suggestive as to constitute a violation of due process of law.

In support of this motion, the appellant called only one witness, Detective Thomas Hudman, who stated that he sent either two or three photographs of the appellant to the Capital City Barber and Beauty Supply Company, where Mrs. Stone was employed, in response to her report that morning of the larceny in question. Mr. Hudman testified that the color photographs were made at police headquarters shortly after the suspect was brought in on the same day of the offense. The suspect had been arrested in connection with another offense. Mr. Hudman's testimony stated:

"A. It was after he was arrested. She had reported this theft out there. And after they went out there and investigated and brought the report back to me, I was fixing to work—I was working on the case, and they picked up this boy in

the area out there. He was seen in this area. So I had some photographs of him sent back out there. I was tied up at headquarters at the time. She said she knew who the boy was but she did not know his name. So we sent the photographs out there and she said that it was him."

Only photographs of the appellant were exhibited to Mrs. Stone; however, some three days later she came to police headquarters and identified the appellant from a number of photographs in the "mug book." Detective Hudman testified that some twelve days after the incident that Mrs. Stone also identified the appellant at preliminary hearing in Recorders Court. The trial judge denied the motion to suppress because it was "apparently uncontroverted, that she could identify this person as previously having seen him but did not know his name."

At the trial Mrs. Stone testified that she was alone in the Capital City Barber and Beauty Supply Company on Friday, May 21, 1971, when shortly after 11:00 in the morning three colored males entered the store, and that one of them engaged her in conversation while two others appeared to look about the store. She stated that the three were between fifteen and eighteen years of age, and that she observed the appellant "taking a wig out of the box and putting it underneath his shirt." She stated that the other two men were shorter and were lighter in weight; that one of these had on a black shirt with blue jeans, while the third party had on a blue-green hat and blue jeans. She described the appellant as wearing a gold or yellowish shirt with short sleeves, and had his shirttail on the outside and had on blue jean pants. She stated that he came within two feet of her, that he was taller than she and the other two boys, and that "he had an odor about his person which was worse than anybody that I have ever smelled before." On cross-examination Mrs. Stone testified that the height, weight, general characteristics, and clothing were given by her to police in re-

porting the theft of the four wigs from the store. That same afternoon a police officer brought either two or three color photographs of the appellant to the store, and she told the officer this was the man. She also testified that she went to police headquarters three days later and looked through the "mug book" and picked out this same photograph of the appellant. Mrs. Stone further testified that she was not aware that the appellant was being held on another charge at the time of her first identification of the appellant from the photographs shown to her, but it was agreed that this occurred on the day of the alleged theft.

Officer Don G. Johnson of the Montgomery Police Department verified that on the morning of May 21, 1971, Mrs. Stone gave a description of the three colored males, all wearing blue jean pants with different colored shirts, with the one wearing the gold or yellowish shirt having a strong body odor to him, and that he subsequently observed the appellant in the general area of the theft and had seen him the same day at his home when he arrested him on another charge and took him to police headquarters. He stated the appellant was wearing "dark blue jean pants with a yellow shirt, and had a strong odor about his person." Officer Johnson testified that he made the arrest before 2:30 in the afternoon because he got off work at that time. He stated that Detective Hudman had made the photographs at police headquarters of the appellant which were subsequently shown to Mrs. Stone. He stated that they had not recovered the wigs, but that they did not search his home.

Detective Hudman was called at trial and verified that he had photographs made on May 21, 1971, at police headquarters of the appellant as he had been arrested on a different charge; that he sent these photographs by another officer to the Capital City Barber and Beauty Supply Company for Mrs. Stone to view. He stated that Mrs. Stone had given him a description of the three colored males and their clothing; that none had on masks or their faces otherwise covered. On cross-examination Detective Hudman stated that Mrs. Stone had come to police headquarters and also identified the appellant from a "mug book," and this photograph was placed in evidence at trial.

Mrs. Stone was recalled to testify and described the four wigs, which were taken from the store on the morning in question by the appellant, and after this the following occurred:

"THE COURT: I want to ask her one question. Is there any doubt whatsoever in your mind that this is the man?

"A (Mrs. Stone) No, sir, it is not.

"THE COURT: Does your testimony have anything to do with the picture in identifying him?

"A No, sir, not at this time.

"THE COURT: But you are sure that this is the man?

"A Yes, sir, I am sure.

"MR. NOVAK: May I ask her some questions, then, Your Honor?

"THE COURT: All right.

"RECROSS-EXAMINATION

"BY MR. NOVAK:

"Q Is it your testimony, then—what do you mean when you say not at this time?

"A I see him right here and I saw him at the municipal hearing and I can identify him now as the one.

"Q At the time you made the initial identification did the photographs have any influence on you at that time in making your initial identification?

"A No, it did not.

"MR. NOVAK: All right, that is all.

"THE COURT: Come down.

"MR. HERBERT: The State rests."

The appellant presented the testimony of Joyce Knox and Cynthia Leonard; they

testified that they had been with the appellant all day prior to his arrest on May 21, 1971, and that they had been with him when he went over to Jeff Davis High School, and then went out to Montgomery Fair in Eastbrook, stopped to get a hamburger, and that he had not been to the Capital City Barber and Beauty Supply Company on the morning in question at all.

The appellant did not move to exclude the State's evidence at trial, nor request the affirmative charge, nor did he file a motion for a new trial.

The appellant contends that the sole identifying witness' (Mrs. Stone's) testimony was so tainted, due to the totality of the circumstances and due to the exhibition to her of photographs only of the appellant so as to make the entire identification process in-court subject to be stricken. He contends that the exhibition of the two or three color photographs of the appellant only to Mrs. Stone was impermissibly suggestive within the meaning of Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L. Ed.2d 1247.

In *Simmons,* the court stated:

"It must be recognized that improper employment of photographs by police may sometimes cause witnesses to err in identifying criminals. A witness may have obtained only a brief glimpse of a criminal, or may have seen him under poor conditions. Even if the police subsequently follow the most correct photographic identification procedures and show him the pictures of a number of individuals without indicating whom they suspect, there is some danger that the witness may make an incorrect identification. This danger will be increased if the police display to the witness only the picture of a single individual who generally resembles the person he saw, or if they show him the pictures of several persons among which the photograph of a single such individual recurs or is in some way emphasized. The chance of misidentification is also

heightened if the police indicate to the witness that they have other evidence that one of the persons pictured committed the crime. Regardless of how the initial misidentification comes about, the witness thereafter is apt to retain in his memory the image of the photograph rather than of the person actually seen, reducing the trustworthiness of subsequent lineup or courtroom identification. "Despite the hazards of initial identification by photograph, this procedure has been used widely and effectively in criminal law enforcement, from the standpoint both of apprehending offenders and of sparing innocent suspects the ignominy of arrest by allowing eyewitnesses to exonerate them through scrutiny of photographs. The danger that use of the technique may result in convictions based on misidentification may be substantially lessened by a course of cross-examination at trial which exposes to the jury the method's potential for error. We are unwilling to prohibit its employment, either in the exercise of our supervisory power or, still less, as a matter of constitutional requirement. Instead, we hold that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. This standard accords with our resolution of a similar issue in Stovall v. Denno, 388 U.S. 293, 301–302, 87 S.Ct. 1967, 1972–1973, 18 L.Ed.2d 1199, and with decisions of other courts on the question of identification by photograph."

█ In passing upon the totality of circumstances presented by this record, we note that while it is true that Mrs. Stone viewed only two or three color photographs of the appellant on the afternoon of the alleged larceny, nevertheless, she had given a complete description of the three men as

to their ages, weight, height, color, color of clothing, and the peculiar odor attributed solely to the appellant. Moreover, she stated to police officers that she "knew the appellant, but did not know his name." This was shown both at the pretrial motion to suppress and the trial. Further, Mrs. Stone ascribed an offensive odor solely to the appellant, which was verified by Officer Johnson, who arrested the appellant within hours of the alleged offense in question. Mrs. Stone also described the height, weight, and facial features, and had clear opportunity to observe the appellant at the store. Moreover, Mrs. Stone, three days later, selected only the appellant from a "mug book" exhibited to her at police headquarters, and likewise positively identified appellant at preliminary hearing in Recorders Court in the City of Montgomery. Further, the record establishes that Mrs. Stone subsequently saw the appellant's two companions on the street in downtown Montgomery and attempted to call the police and have them arrested. We, therefore, believe that the in-court identification of the appellant was not so tainted by the pretrial exhibition to her of the photographs of the appellant, and that the trial court correctly permitted Mrs. Stone's testimony to be submitted to the trial jury. Redmon v. State, 47 Ala.App. 421, 255 So. 2d 604; Dawson v. State, 47 Ala.App. 293, 253 So.2d 362; Robinson v. State, Miss., 253 So.2d 398.

■ As to the issue of the assistance of counsel at the time of the out-of-court photographic identification, the United States Court of Appeals for the Fifth Circuit, in United States v. Ballard, 423 F.2d 127, at 131, stated:

"We follow our brethren of the Second, Seventh and Tenth Circuits in holding that *Gilbert* [Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178] and *Wade* [United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149] —neither through *Simmons* nor outside *Simmons*—require the counsel for an ac-

cused be present at the time of any out-of-court photographic identification, regardless of whether the accused is in custody or not.

"Actually the point raised in *Simmons* deals with the application of the Fifth Amendment guaranty of due process vis-a-vis photographic identification. As Mr. Justice Harlan stated in *Simmons*, 'This is a claim which must be evaluated in light of the totality of surrounding circumstances.' "

See also Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411. Cf. United States v. Sutherland, 5 Cir., 428 F.2d 1152.

We have carefully reviewed the entire record in this cause, as we are required to do by Title 15, Section 389, Code of Alabama 1940 (Recompiled 1958), and find same to be free from error. The judgment of the trial court is due to be and the same is hereby

Affirmed.

CATES, P. J., and ALMON and HARRIS, JJ., concur.