278 So.2d 748

**Jerry Franklin TERRY, alias**

v.

**STATE.**

**4 Div. 219.**

Court of Criminal Appeals of Alabama.

May 29, 1973.

John B. Crawley, Troy, for appellant.

William J. Baxley, Atty. Gen., and David Lee Weathers, Asst. Atty. Gen., for the State.

**TYSON, Judge.**

The indictment charges the appellant with the robbery of one A. B. Fredrick. The Jury's verdict and judgment set sentence at twenty years imprisonment in the penitentiary.

James B. Metzer testified that on April 8, 1972, he was employed with the Ozark Police Department. He received a radio dispatch on his official radio with reference to a robbery in Troy, Alabama, where a 1971 Dodge Charger "had been stolen by a colored person"; "[T]hey gave the description of the car, a green '71 Charger with a luggage rack on the back, with no license plate." The call was received about 2:40 p. m., and he proceeded to drive his police auto to a point where he placed his car across the street, as he had been advised that Lt. Stubbs of the Ozark Police Department was in pursuit of the missing vehicle. He stated that they stopped a 1971 Dodge Charger being driven by the appellant, and that a young lady was in the vehicle with him; that the two of them alighted, and the lady stated that there was a pistol in the appellant's coat pocket, and that the jacket was lying on the floor of the car. He stated that he reached inside the car, as Lt. Stubbs covered the pair, and removed the jacket, and from it took out a Beretta .32 caliber 7.65 pistol. He stated that the appellant was stopped on U. S. 231, and that Lt. Stubbs had arrived on the scene just a few seconds after he stopped appellant.

Lt. Emil Kermit Stubbs testified that he was formerly a police lieutenant with the Ozark Police Department, and was driving a police car in pursuit of a 1971 Dodge Charger, which had a luggage rack, but no license tag, driving down U. S. 231 when he and Officer Metzer stopped the vehicle at the "[I]ntersection of Dale County 36 and U. S. 231," that they directed the appellant and the young lady to get out of the vehicle, which they did, and that Officer Metzer removed the jacket and pistol from the vehicle driven by the appellant.

The State next presented the testimony of Chief of Police Tom Potts of the City of Troy, Alabama, who testified he received a call to go to O'Neal's Used Car Lot at South Three Notch Street about 2:30 on the afternoon of April 8, 1972. He stated that on his arrival at the car lot he found Mr. Fredrick and a colored man, named Horace Boswell, and in the bathroom of the adjoining office at the car lot, he recovered two pieces of fabric, each a foot and a half long, lying on the floor of the restroom. The fabric matched that of the jacket taken from the vehicle driven by the appellant.

The State then presented the testimony of A. B. Fredrick, who testified that the appellant had come to the O'Neal Motor Company, in Troy, Alabama, on April 8, 1972, and had walked over the parking lot shortly before lunch, looking at cars. Mr. Fredrick testified that he went to lunch, and after returning, the appellant asked him if he could drive around in one of the cars, which was a 1971 Dodge Charger, and that they drove around for twenty-five minutes or so and returned to the lot; that he went into the office to use the telephone, and as he did the appellant drew his pistol on him and had him enter the bathroom adjoining the office; that he bound his feet and placed a gag in his mouth; that he kicked on the door and this was opened by a colored man, Horace Boswell, who worked at the used car lot, and who untied him; that he then telephoned the Troy Police Department and reported the robbery. He stated further that the appellant took his billfold and watch. Mr. Fredrick identified the cloth with which he had been bound in the bathroom adjoining the office. He further stated that his billfold and watch were subsequently returned

to him by the Police Department. The appellant presented no evidence at trial.

I

Appellant argues that the accused had a right to counsel at the time of photographic identification when adversary judicial proceedings had been initiated against him.

In the case at bar, Mr. Fredrick's testimony developed that he was shown "5, 6, or 7 black and white photographs two or three days" after the robbery at the office of the O'Neal Used Car Lot by Chief of Police Potts. He stated that Chief Potts did not attempt to single out any of these, but that he immediately selected one photograph which was that of the appellant himself. At trial, Mr. Fredrick made an independent in-court identification of the appellant. He further stated that he recognized the appellant from having been with him off and on for approximately one and a half hours on April 8, 1972, and that the exhibition of the photographs to him some two or three days later had no bearing on his identification of the appellant. In Simmons v. United States, 390 U.S. 377, 88 S. Ct. 967, 19 L.Ed.2d 1247, the Court stated:

" 'It must be recognized that improper employment of photographs by police may sometimes cause witnesses to err in identifying criminals. A witness may have obtained only a brief glimpse of a criminal, or may have seen him under poor conditions. Even if the police subsequently follow the most correct photographic identification procedures and show him the pictures of a number of individuals without indicating whom they suspect, there is some danger that the witness may make an incorrect identification. This danger will be increased if the police display to the witness only the picture of a single individual who generally resembles the person he saw, or if they show him the pictures of several persons among which the photograph of a single such individual recurs or is in

some way emphasized. The chance of misidentification is also heightened if the police indicate to the witness that they have other evidence that one of the persons pictured committed the crime. Regardless of how the initial misidentification comes about, the witness thereafter is apt to retain in the memory the image of the photograph rather than of the person actually seen, reducing the trustworthiness of subsequent lineup or courtroom identification. "Despite the hazards of initial identification by photograph, this procedure has been used widely and effectively in criminal law enforcement, from the standpoint both of apprehending offenders and of sparing innocent suspects the ignominy of arrest by allowing eyewitnesses to exonerate them through scrutiny of photographs. The danger that use of the technique may result in convictions based on misidentification may be substantially lessened by a course of cross-examination at trial which exposes to the jury the method's potential for error. We are unwilling to prohibit its employment, either in the exercise of our supervisory power or, still less, as a matter of constitutional requirement. Instead, we hold that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. This standard accords with our resolution of a similar issue in Stovall v. Denno, 388 U.S. 293, 301–302, 87 S.Ct. 1967, 1972–1973, 18 L. Ed.2d 1199, and with decisions of other courts on the question of identification by photograph." ' "

In passing upon the totality of the circumstances presented by this record, as required by Simmons, supra, we are of the opinion that the in-court identification of the appellant was not so tainted by the pre-

trial exhibition of the photograph of the appellant as to prevent Mr. Fredrick's testimony being presented to the trial jury. McGhee v. State, 48 Ala.App. 330, 264 So. 2d 560; Prince v. State, 50 Ala.App. 644, 282 So.2d 83; Hopkins v. State, 49 Ala. App. 159, 269 So.2d 175.

As to the issue of the assistance of counsel at the time of the out-of-court photographic identification, we quote from McGhee v. State, supra, as follows:

"As to the issue of the assistance of counsel at the time of the out-of-court photographic identification, the United States Court of Appeals for the Fifth Circuit, in United States v. Ballard, 423 F.2d 127, at 131, stated:

" 'We follow our brethren of the Second, Seventh and Tenth Circuits in holding that *Gilbert* [Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178] and *Wade* [United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149]—neither through *Simmons* nor outside *Simmons*—require the counsel for an accused be present at the time of any out-of-court photographic identification, regardless of whether the accused is in custody or not.

" 'Actually the point raised in *Simmons* deals with the application of the Fifth Amendment guaranty of due process vis-a-vis photographic identification. As Mr. Justice Harlan stated in *Simmons*, "This is a claim which must be evaluated in light of the totality of surrounding circumstances." ' "

It is clear from the record in this cause that the in-court identification was based upon observations of the suspect other than those involving the use of photographs. Cases cited, supra.

We have carefully considered this record, as required by Title 15, Section 389, Code of Alabama 1940, and find same

to be free from error. The judgment of the trial court is due to be and the same is hereby

Affirmed.

All the Judges concur.