Curtis Leon Lomax was charged with the robbery of Jack McGee Sellers by taking $1,700.00 in currency from his person. The jury found the appellant "guilty as charged" and fixed punishment at ten years imprisonment. The trial court set sentence in accordance with this verdict.
Jack Sellers testified that on July 14, 1975, he was employed by Ed Braswell Furniture Company, 3106 North Twenty-Seventh Street, Birmingham, Alabama. On this date, shortly after 2:00 p.m., Sellers stated he was waiting on a customer in the rear of the building. Sellers related that someone struck him from the rear on his head with a blunt instrument, knocking him to the floor. Sellers indicated that when he regained his feet he saw a black male place a gun in Mrs. Marie Braswell's back and tell her not to turn around or else he would shoot. Then this black male pulled the chair in which Ida Williams was sitting away from the desk and told Mrs. Williams and Mrs. Braswell to get on the floor. Sellers stated that the blunt instrument with which he was struck caused a cut on his scalp but did not affect his vision or cause him any dizziness. Sellers indicated that he observed the black male face to face approximately five to ten seconds after which he was told to lie on the floor. Although there were two black males participating in the robbery, he only got a good look at one of them. Sellers described this black male as being tall, slender, wearing a straw hat and sunglasses, a flowered shirt and blue pants, and having a goatee. Sellers related that the appellant put all of the cash from the cash register in the utility change box, then had him open the vault where the appellant obtained all the cash proceeds. It was during this time that he observed appellant's face. The appellant then had everyone in the store, including two customers, go to the back room where they remained until the two black males had left the premises. While in this back room, Sellers indicated that he heard a gunshot and children screaming. Sellers testified that he found a straw hat on the floor in the front room after the robbery. Sellers stated the two robbers took somewhere between $1,700.00 and $1,800.00 in currency.
Sellers testified that a day or two after the robbery Birmingham Detective Coleman brought him between six and eight photographs from which he selected appellant's picture as the man who had robbed him. Sellers stated that he also attended two lineups at the city jail but could not identify anyone in either lineup. Sellers stated that he also saw the appellant in the hallway just outside the courtroom before the preliminary hearing. The appellant was not handcuffed or in the custody of a law enforcement officer when he saw him walk by in the hall. Sellers positively identified the appellant at trial as one of the two men who had robbed him on July 14, 1975, at Braswell Furniture Company and stated that his identification was based on his observation of appellant during the robbery on this date.
Detective Sergeant LaVaughn Coleman testified that he was given the Braswell Furniture Store robbery case on July 15, 1975. Coleman indicated that he received a straw hat which was found at the scene of the robbery from Officer John Fisher. Coleman stated the hat was given to appellant's father. Coleman testified that a day or two after the robbery Sellers picked the appellant from a group of pictures as one of the two men who robbed him.
Mrs. Marie Braswell picked the appellant out of a lineup on Saturday, July 19, 1975, as one of the two men who resembled the men involved in the robbery. She could not positively identify Lomax. *Page 834 
Officer Coleman stated that Mr. Sellers was never asked to select anyone from a lineup in his presence.
Mrs. Marie Braswell testified that she was employed at Braswell Furniture Company on July 14, 1975. She stated she was working in the vicinity of the cash register near the back of the store shortly after 2:00 o'clock in the afternoon. She stated that a gun was suddenly stuck in her back and she was told not to turn around. She was instructed by the gunman to get on the floor, which she did. Mrs. Braswell testified that one of the gunmen told Mr. Sellers to go with him to the vault and open it, which he did. After this, the two gunmen took Mrs. Braswell, Mrs. Williams, Mr. Sellers, and two customers to the back room. While in this room, a gunshot was heard after which some children screamed. Mrs. Braswell described one of the gunmen as being tall and slender, wearing sunglasses and a straw hat. Mrs. Braswell indicated that she attended a lineup consisting of several black males from which she saw only one man who resembled the build and height of the appellant. She stated that her identification of the appellant at the lineup as one of the robbers was not positive. Likewise, she could not positively make an in-court identification. Mrs. Braswell selected the appellant at the lineup based primarily upon his height and build because she never actually got a good look at the man's face during the robbery. She also said the appellant was the man she saw at the lineup.
Mrs. Ida Williams testified that she was employed by Braswell Furniture Company on July 14, 1975. She indicated that between 2:00 and 2:30 p.m. on this date a man jerked her chair around and told her to "hit the floor." Mrs. Williams never saw the man's face. In a few minutes the gunmen placed everyone in the back room where they remained until the two gunmen left the store. While in the back room a shot was fired. When she came out of the back room she noticed a straw hat on the floor of the store.
Mrs. Reaver Daniels testified that on July 14, 1975, around 2:00 p.m., she was in Braswell Furniture Company talking with Mr. Sellers about her account with the store. At this time a black man hit Mr. Sellers over the head with a pistol and said, "This is a stickup" (R. p. 123). Mrs. Daniels testified that the two gunmen instructed them to go to the back room and while they were back there "two shots" were fired. Mrs. Daniels stated she could not identify either of the two black males as she was very nervous and upset.
The appellant's motion to exclude was overruled.
Curtis Leon Lomax testified that on July 14, 1975, he was employed by Lomax Lomax Construction Company. He stated he was working in Fairfield, Alabama, on that date repairing a roof for a Mr. Paul Caruso. Lomax stated that he was working at Mr. Caruso's home between 11:00 or 12:00 a.m. and 4:00 or 5:00 p.m. He stated that he was accompanied by his father and two other persons, a Mr. Allen and a Mr. Gilmore. Lomax related that he had been in Braswell Furniture Store several times to pay bills but had not gone there on July 14, 1975. Lomax admitted on cross-examination that he wore a goatee in July of 1975.
 I
The in-court identification of the appellant by Mr. Jack Sellers, Lomax contends, was so tainted by the unduly suggestive photographic identification process as to constitute a denial of due process of law. The appellant points out that out of the six or eight photographs shown to Mr. Sellers a day or two after the robbery by Detective Coleman, one was of a white male. Appellant also contends that only one photograph, which was the appellant's, showed a male with chin whiskers. The appellant also contends that among these photographs he was the only one who appeared to be "noticeably thin." Also, the appellant contends that the six photographs, which were identified by Sergeant Coleman and introduced into evidence at trial, were black *Page 835 
and white, and Mr. Sellers testified that he was shown color photographs.
Mr. Sellers stated that he observed the appellant, face to face, for about five to ten seconds (R. p. 10) and later saw him for about five minutes while Sellers was lying on the floor (R. pp. 10, 11). Further, Mr. Sellers indicated that he observed the appellant while opening the vault at appellant's direction and watching him place the proceeds in the cash box before he, Sellers, and the other persons in the store were placed in the back room.
The record in this case indicates that all six of the photographs identified by Sergeant Coleman were of black males and several of these were of men who were noticeably thin. Two of those pictured had chin whiskers, and while Mr. Sellers did indicate initially that he was shown colored photographs, his subsequent testimony on cross and redirect indicated that he meant these photographs were "tinted."
This Court is required by Simmons v. United States,390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247, to consider the totality of circumstances to determine whether or not the exhibition to Mr. Sellers of photographs a day or two following the robbery was so suggestive as to make his in-court identification of the appellant subject to be stricken.
The facts in this case simply do not lend themselves to an interpretation such as suggested by the appellant. Mr. Sellers had ample opportunity to observe, and did observe, the appellant moving about the store at the time of the robbery. His testimony at trial indicates that this was the basis of his identification, though he did state that he recalled observing the appellant walking down the hallway shortly before the preliminary hearing at court and recognized him at that time. Mr. Sellers indicated that he did not identify anyone at a lineup as such.
As to the issue of the assistance of counsel at the time of the out-of-court identification process, this issue was determined adversely to the appellant by the United States Supreme Court in United States v. Ash, 413 U.S. 300,93 S.Ct. 2568, 37 L.Ed.2d 619. See also McGhee v. State, 48 Ala. App. 330, 264 So.2d 560; Terry v. State, 50 Ala. App. 299,278 So.2d 748; and Matthews v. State, Ala.Cr.App., 333 So.2d 189.
This corporal identification of the appellant was conducted before the initiation of any adversary judicial criminal proceedings, whether by way of formal charge, preliminary hearing, indictment, or arraignment, thus, the right to counsel at this time had not attached. See Moore v. Illinois, 1977,434 U.S. 220, 98 S.Ct. 458, 54 L.Ed.2d 424. See also Childers v.State, Ala.Cr.App., 339 So.2d 597, cert. denied, Ala.,339 So.2d 601; and Henry v. State, Ala.Cr.App., 355 So.2d 411, 6 Div. 359, February 7, 1978.
 II
The appellant contends that Mrs. Braswell's identification of the appellant at trial was subject to be stricken as she was unable to make a positive in-court identification, either at the time of the lineup, or at trial.
In Carpenter v. State, 42 Ala. App. 618, 174 So.2d 336, we find the following:
 "The testimony of the victim of the alleged robbery which was offered to establish the identity of the appellant as one of the alleged robbers presented a jury question on that matter. Although this witness did not positively identify the appellant, did not observe appellant under ideal conditions, failed to identify him in a police line-up, and although there were minor discrepancies in his description of the alleged robber, these matters, in our opinion, went to the weight of the testimony and did not destroy its value for the purpose of establishing identity. See 23 C.J.S. Criminal Law §§ 864, 920."
See Hall v. State, Ala.Cr.App., 353 So.2d 51 (1977); andHopkins v. State, 57 Ala. App. 78, 326 So.2d 144.
We have carefully examined this record and find same to be free of error. The judgment is therefore
AFFIRMED.
All the Judges concur. *Page 836