279 So.2d 539

**Thomas R. PRINCE**

v.

**STATE.**

**6 Div. 392.**

Court of Criminal Appeals of Alabama.

March 27, 1973.

Rehearing Denied May 8, 1973.

James J. Jenkins, Sp. Asst. Atty. Gen., Tuscaloosa, for the State.

Robert Bryan, Birmingham, for appellant.

TYSON, Judge.

The appellant was indicted by the Grand Jury of Jefferson County, Alabama, for robbery on May 10, 1962. This first indictment for the robbery of an "A & P" store resulted in appellant's conviction and sentence of twenty years, culminating in this appeal. A second indictment was returned on December 5, 1963, also for robbery. Prior to these indictments, appellant apparently left the State of Alabama and

was arrested, convicted, sentenced, and imprisoned in California on November 27, 1962, for first degree robbery and grand theft.

Appellant presents to this Court the issue involving whether he was denied his constitutional right under the Sixth and Fourteenth Amendments of the United States Constitution to a speedy trial in the State of Alabama. Appellant's contention essentially is, upon his incarceration in California, that he demanded of the State of Alabama a trial upon the charges on which he was indicted in this State, and did not receive such a trial until September 8, 1971. After an extensive review, the record indicates that appellant, up until July 9, 1968, made the following requests; first, on October 28, 1963, appellant corresponded with the district attorney for the Tenth Judicial Circuit, requesting the charges against him be dropped. This correspondence was repeated on November 23, 1966. During the period prior to July 9, 1968, appellant filed various petitions in California State courts and Federal courts. However, none of these appear to have been filed during this period in the State of Alabama demanding trial.

On July 9, 1968, appellant sent to the district attorney in Birmingham, to be filed in the Circuit Court, a request for trial upon the charges presently pending against him. This request was never filed nor answered. During this period of time, appellant was eligible for parole in California, and had appeared before the parole board beginning in 1964. However, appellant would not accept the condition of the parole, i.e., releasing him to the State of Alabama for trial, but refused extradition until 1971.[1] Appellant also during this period refused to waive extradition, and as a consequence remained in confinement until his actual parole release date to Alabama.[2]

The State of Alabama, beginning July 12, 1962, requested, of California, the appellant for trial, and on this date filed detainers against him. Continuously from July 12, 1962, until February 1, 1971, the State of Alabama informed California that when appellant was available, Alabama desired to return appellant to this State for trial.[3]

The State of California never notified Alabama that appellant would be available, or released, until he was paroled on February 22, 1971.[4] The Chief Executive for the State of Alabama issued a requisition warrant to the State of California upon which the Governor of California issued a rendition warrant and released the appellant to Alabama for trial.

Seven months later, trial began. During the period, appellant requested several continuances, but his cases were placed upon the docket for trial immediately upon his return. The first of these was reached on September 9, 1971.

Appellant had also filed a second motion for a speedy trial upon his return to Alabama, and, through counsel, had filed motions to suppress and exclude the State's evidence.

At trial, the State of Alabama presented the testimony of three witnesses, Mrs. Jean McKinney, the cashier at the A & P store, Mr. Joseph P. Potter, the manager of the A & P store, and Mr. Ollie V. Vance, a thirty-one year police detective veteran, who has now retired, and who conducted

---

1. See Title 10, Section 1389 et seq., California Penal Codes Annotated—Agreement on Detainers.

2. Cf. Nelson v. George (1970), 399 U.S. 224, 90 S.Ct. 1963, 26 L.Ed.2d 578.

3. Alabama made thirteen separate requests of the State of California, advising California that appellant, when made available by California, would be extradicted to Alabama, at Alabama's expense, for trial, and to advise of his release date. See also Footnote 8.

4. Apparently, due to appellant's refusal of extradition, California elected to require appellant to complete his sentence before releasing him to Alabama. Clearly, the appellant could not both demand trial in Alabama on the one hand, and refuse to appear on the other. See also Footnote 9.

the investigation of the robbery, which occurred at the A & P store in Birmingham on May 7, 1962. Both Mrs. McKinney and Mr. Potter made independent in-court identification of the appellant, and further described that on the night of May 7, 1962, the appellant had entered the store shortly before 7:00 p. m. and approached the cash register where Mrs. McKinney was on duty. Mrs. McKinney stated:

"Well, this colored man came into my line and made a small purchase. I don't remember whether it was cigarettes or— just one item, I think, then after he made the purchase he handed me a piece of paper. I took the paper and read it and he had wrote on it for me to open the register and give him the money or he would shoot me and I looked down; he had a sack laying on my counter. I told him I couldn't open the register and he looked at me again and told me to open the register, said I mean it, and I told him again I couldn't open the register.

"When I said that, he hit the no sale button. I saw his hand coming toward the money and when I saw that I pushed the drawer as if to close it and run; and he missed Mr. Potter by maybe—"

Mrs. McKinney's testimony was verified by the store manager, who also testified that, after the monies were placed in a paper bag, and as the appellant was backing out of the store, the following:

"A And I rushed to the front I thought maybe somebody was shoplifting. I didn't know what was taking place and she was squatting down in front of the checking counter, on the front side of it, just hollering Mr. Potter, Mr. Potter, and I went up there I saw this colored man backing out the door and he had a large paper bag, we call it a mealbag, which is twelve-two pound bags of meal, we call the bags a slip, a heavy pasteboard paper bag, and he was backing out the door, the door right in front of me right down the counter.

"I didn't know what had happened. I just said, come here, boy. When I did, he just made a lunge with the paper bag and I throwed my head behind the cigarette rack, happened to see something, it happened so quick, the gun went off and shot the cigarettes about six inches from where I was standing, went through the rack, through the sign in the middle of the counter and on into the back wall."

Detective Vance testified that in addition to his investigation on the evening of May 7, 1962, wherein each of the witnesses had described in general terms the party who performed the robbery, the following morning he returned to the store with seven or eight photographs of different persons. Detective Vance stated that both Mrs. McKinney and Mr. Potter each, separately and without consulting the other, selected the photograph of the appellant.

The appellant had presented evidence in his behalf by his brother, James Prince, and his sister, Blanche Agee, who both testified that their brother had left Birmingham during the Spring of 1962, sometime prior to Easter, and that they had corresponded with him from California. Also a photograph of the appellant, bearing the date of December 15, 1961, was placed in evidence, which showed the appellant with a mustache. Their testimony was also corroborated by another brother, Edward Prince.

The able defense counsel had his law clerk, one Timothy Lee Dillard, testify to the effect that he had talked with the State's witnesses in the process of assisting in the preparation of the case for trial, and verified that certain discrepancies existed in each of the State's witnesses' testimony, such as the height of the subject, that "all black people look alike," and that there had been a lineup where they first saw appellant (Mr. Potter), before selecting appellant from "mug shots."

Appellant's motions to exclude and suppress the State's evidence were overruled.

## I

Recently, the United States Supreme Court, in Dickey v. Florida, 398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26, in disposing of the contentions of the State of Florida, indicated:

"Florida argues that the right of the petitioner under the Federal Constitution did not arise until this Court's decision in Klopfer v. North Carolina, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967), and that not until Smith v. Hooey, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969), was there a constitutional requirement that the State press for trial of a defendant in custody in another jurisdiction.

"As noted by the Court in Smith v. Hooey, the holding of the *Klopfer* case was that 'the Fourteenth Amendment, [applying] the Sixth Amendment right to a speedy trial is enforceable against the States as "one of the most basic rights preserved by our Constitution."' 393 U.S. at 374–375, 89 S.Ct. at 575.

"From this the Court went on to hold that on demand a State had a duty to make a diligent and good-faith effort to secure the presence of the accused from the custodial jurisdiction and afford him a trial . . ."

More recently, in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101, the Supreme Court, in discussing the so-called "demand waiver rule," pointed out:

"In excepting the right to a speedy trial from the rule of waiver we have applied to other fundamental rights, courts that have applied the demand-waiver rule have relied on the assumption that delay usually works for the benefit of the accused and on the absence of any readily ascertainable time in the criminal process for a defendant to be given the choice of exercising or waiving his right. But it is not necessarily true that delay benefits the defendant. There are cases in which delay appreciably harms the defendant's ability to defend himself. Moreover, a defendant confined to jail prior to trial is obviously disadvantaged by delay as is a defendant released on bail but unable to lead a normal life because of community suspicion and his own anxiety.

"The nature of the speedy-trial right does make it impossible to pinpoint a precise time in the process when the right must be asserted or waived, but that fact does not argue for placing the burden of protecting the right solely on defendants. A defendant has no duty to bring himself to trial; the State has that duty as well as the duty of insuring that the trial is consistent with due process. Moreover, for the reasons earlier expressed, society has a particular interest in bringing swift prosecutions, and society's representatives are the ones who should protect that interest.

"It is also noteworthy that such a rigid view of the demand rule places defense counsel in an awkward position. Unless he demands a trial early and often, he is in danger of frustrating his client's right. If counsel is willing to tolerate some delay because he finds it reasonable and helpful in preparing his own case, he may be unable to obtain a speedy trial for his client at the end of that time. Since under the demand-waiver rule no time runs until the demand is made, the government will have whatever time is otherwise reasonable to bring the defendant to trial after a demand has been made. Thus, if the first demand is made three months after arrest in a jurisdiction which prescribes a six months rule, the prosecution will have a total of nine months—which may be wholly unreasonable under the circumstances. The result in practice is likely to be either an automatic, pro forma demand made immediately after appointment of counsel or delays which, but for the demand-waiver rule, would not be tolerated. Such a result is not consistent with the interests of defendants, society, or the Constitution.

"We reject, therefore, the rule that a defendant who fails to demand a speedy trial forever waives his right. This does not mean, however, that the defendant has no responsibility to assert his right. We think the better rule is that the defendant's assertion of or failure to assert his right to a speedy trial is one of the factors to be considered in an inquiry into the deprivation of the right. Such a formulation avoids the rigidities of the demand-waiver rule and the resulting possible unfairness in its application. It allows the trial court to exercise a judicial discretion based on the circumstances, including due consideration of any applicable formal procedural rule. It would permit, for example, a court to attach a different weight to a situation in which the defendant knowingly fails to object from a situation in which his attorney acquiesces in long delay without adequately informing his client or from a situation in which no counsel is appointed. It would also allow a court to weigh the frequency and force of the objections as opposed to attaching significant weight to a purely pro forma objection.

"In ruling that a defendant has some responsibility to assert a speedy-trial claim, we do not depart from our holdings in other cases concerning the waiver of fundamental rights, in which we have placed the entire responsibility on the prosecution to show that the claimed waiver was knowingly and voluntarily made. Such cases have involved rights which must be exercised or waived at a specific time or under clearly identifiable circumstances, such as the rights to plead not guilty, to demand a jury trial, to exercise the privilege against self incrimination, and to have the assistance of counsel. We have shown above that the right to a speedy trial is unique in its uncertainty as to when and under what circumstances it must be asserted or may be deemed waived. But the rule we announce today, which comports with constitutional principles, places the primary burden on the courts and the prosecutors to assure that cases are brought to trial. We hardly need add that if delay is attributable to the defendant, then his waiver may be given effect under standard waiver doctrine, the demand rule aside.

"We, therefore, reject both of the inflexible approaches—the fixed time period because it goes further than the Constitution requires; the demand-waiver rule because it is insensitive to a right which we have deemed fundamental. The approach we accept is a balancing test, in which the conduct of both the prosecution and the defendant are weighed.

"A balancing test necessarily compels courts to approach speedy-trial cases on an ad hoc basis. We can do little more than identify some of the factors which courts should assess in determining whether a particular defendant has been deprived of his right. Though some might express them in different ways, we identify four such factors: Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant."

Applying the foregoing standards to the facts presented in the record in the case at bar, we find that from the period from 1962 until the mailing of his "demand" to the district attorney in Birmingham in 1968, the appellant's efforts were largely frivolous, being in the nature of the letters seeking dismissal of the charges rather than a good faith demand of trial to vindicate his position. Also equally sufficient is the fact that from 1962 through 1971, the State of Alabama had made some thirteen separate requests of California, seeking information as to the early release of the appellant to the State of Alabama for trial. Each of these indicated that the State of Alabama would forward the necessary extradition papers in the event that the appellant would not waive same, and

such extradition would be at the expense of the State of Alabama. Because of these circumstances, we are of the opinion that the State of Alabama secured the presence of the appellant as soon as it could because the State of California at no time had indicated that the appellant would be made available for trial in Alabama prior to releasing the appellant in 1971.[5, 6] In Ponzi v. Fessenden, 258 U.S. 254, 42 S.Ct. 309, 66 L.Ed. 607, we find:

"The chief rule which preserves our two systems of courts from actual conflict of jurisdiction is that the court which first takes the subject-matter of the litigation into its control, whether this be person or property, must be permitted to exhaust its remedy, to attain which it assumed control, before the other court shall attempt to take it for its purpose . . . ."

Therefore, California presumably acted under the above and did exhaust its remedy before releasing appellant to the State of Alabama for trial. See also, California Penal Codes Annotated, Title 12, Section 1548.1 et seq.

In discussing the comity between sovereign states, when seeking a fugitive, the Supreme Court of Illinois in People v. Klinger, 319 Ill. 275, 149 N.E. 799, 42 A. L.R. 581, stated:

"The right of the Governor of one state to make a requisition on the Governor of another state for the delivery of a fugitive from justice, and the right of the latter Governor to grant or refuse it, are conferred by act of Congress on the ground of comity between states. If at the time such requisition is made the fugitive is in the custody of the courts of the asylum state under a charge of offense against its laws, the Governor thereof is not required to surrender such fugitive until after the judgment of the court of that state is satisfied. The executive of the asylum state may, however, relinquish the prisoner by waiving jurisdiction, even though such fugitive is under the jurisdiction of the courts of such asylum state. Roberts v. Reilly, 116 U.S. 80, 6 S.Ct. 291, 29 L.Ed. 544; Hart v. Mangum, 146 Ga. 497, 91 S.E. 543. The right of the Governor of the asylum state to decline to honor a demand for extradition is a right of the state, and is in nowise based on the personal right of the fugitive . . . ."

In light of these authorities, it is clear that the State of Alabama, under the facts presented by the record on appeal in this case, had no opportunity to exercise its jurisdiction over the appellant for the offense charged until his return to the State of Alabama in 1971; therefore, the trial court correctly denied appellant's motion for a speedy trial dealing with the period of incarceration in California prior to his return to the State of Alabama.[7, 8, 9]

---

5. Cf. Nelson v. George (1970), 399 U.S. 224, 90 S.Ct. 1963, 26 L.Ed.2d 578.

6. On each occasion that appellant appeared before the California Parole Board, according to information contained in the record, he advised the California authorities that he would not waive extradition to Alabama.

7. The record indicates only one "demand" for trial in Alabama. This appeal is the first instance in which appellant has presented his constitutional claim to the Alabama Appellate Courts for consideration. See Braden v. Thirtieth Judicial Circuit of Kentucky, No. 71–6516, 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443.

8(a). Illustrative of Alabama's request of California is the following:
"To the Sheriff's Office, Los Angeles, California, dated July 12, 1962:
"We have been informed by the FBI that subject is in your custody on a charge of Armed Robbery, and pursuant to our telegram to you today enclosed are certified copies of Indictment and Writ of Arrest by which he is charged with Robbery in this Court.
"Please enter these papers as our detainer against Prince and acknowledge them, so that we may notify the local FBI office to withdraw their fugitive warrant.

9. See note 9 on page 375.

Sellers v. State, 48 Ala.App. 178, 263 So. 2d 156.

## II

█ We note also that appellant had filed a motion for a speedy trial in the Circuit Court of Jefferson County after his return to the State of Alabama. It is sufficient to note that the State of Alabama placed the appellant's case on the trial docket immediately upon his return to this State. There were continuances granted to

"Also, please let us know the status of the pending charges there and the likelihood of his being returned here. If he should become available please ascertain if he will waive extradition, and if so, notify this office and we shall promptly send our agent for him. If not, we shall obtain the necessary extradition papers.

"s/ Emmett Perry
Solicitor"

**8(b).** To Superintendent of California Institution for Men, dated January 2, 1963:
"Thank you for your letter of 27 December, 1962, advising that subject is an inmate of your institution.

"There are pending here the two robbery cases indicated above. Enclosed are certified copies of our Indictments and Capiases thereon.

"Please advise the approximate release date as shown by your files, and keep us advised as to any change therein. This office will extradite at our expense.

"s/ Emmett Perry
Solicitor"

**8(c).** To Mr. William C. Keating, Jr., Superintendent California Medical Facility, Vacaville, California, dated November 7, 1966:
"We shall appreciate your advising us the status of our detainer against subject.

We have had no further communication from you since March 3, 1966, at which time you notified us Prince was scheduled for parole consideration in June, 1966. We replied by letter of March 10, 1966, that it is yet our intention to return him to this jurisdiction, when available, for trial upon two pending cases of Robbery.

"s/ Earl C. Morgan
District Attorney"

**8(d).** To L. S. Nelson, Warden, California State Prison, San Quentin, California, dated August 19, 1970:
"This will acknowledge receipt of your notification of July 27, 1970, that the above named subject appeared on your Adult Authority calendar.

"We intend to return this defendant to this jurisdiction. In the event that he fails to sign waiver of extradition,

please advise immediately and we will take necessary steps to complete extradition.

"s/ Earl C. Morgan
District Attorney"

**9(a).** Illustrative of California's position in this matter is as follows:
"To Emmett Perry, Solicitor, Birmingham, Alabama, dated January 23, 1963:
"Pursuant to your request of January 2, 1963, notations have been entered on our records to the effect that our above-named inmate is WANTED by your department.

"You will be given the usual sixty (60) days' notice prior to his release from the Department of Corrections.

"s/ E. J. Oberhauser
Superintendent
Department of Corrections
Chino, California"

**9(b).** "To Emmett Perry, Solicitor, dated March 1, 1967:
"A detainer has been filed by your agency on the above man who is scheduled to appear before the Adult Authority for sentence and parole consideration on the JUNE 1967 calendar. The Adult authority can grant parole to men having detainers with the following conditions:
"A. 'Granted Parole Subject to Hold.' This action means that, unless the agency placing the hold actually takes custody, the man will be released to a parole program without further referral to the Adult Authority.
"B. 'Granted Parole to Hold.' This action means that, unless the agency placing the hold actually takes custody, the case must be referred back to the Adult Authority for further consideration.
"In most cases wherein detainers are on file it would be helpful if the Adult Authority could have some information concerning the plans of the agency placing the hold with reference to taking custody of the inmate upon a California release either by parole or discharge.
"Fully advise us regarding (1) Your intention of taking custody regardless of manner of California release i. e. parole or discharge; or (2) Your desire to arrange concurrent parole with California

both appellant and the State of Alabama, and there were instances where appellant's case was not reached due to the crowded trial docket of the Circuit Court of Jefferson County in Birmingham until September, 1971. We hold that these continuances were properly a matter within the discretion of the trial court, and we see no abuse of discretion by the record as presented. Peaden v. State, 275 Ala. 72, 152 So.2d 136. See Volume 6A, Alabama Digest, Criminal Law, ☞590(1), for additional authorities.

### III

■ Appellant had filed a pretrial motion to suppress, contending that the exhibition of the photographs of the appellant to Mrs. McKinney and Mr. Potter was "impermissibly suggestive" within the meaning of Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247.

We understand the rule of *Simmons* to require that the "totality of circumstances" be considered by the reviewing court under such a contention.

Here, Detective Vance exhibited some seven or eight black and white photographs of different persons, separately, to Mrs. McKinney, and subsequently to Mr. Potter. At no time did he suggest the identity of any of them to the witnesses, nor was the appellant's name brought up in the discussion until both Mrs. McKinney and Mr.

Potter each, separately, had selected the photograph of the appellant. While it is true that a number of years went by before either of them again saw the appellant in the courtroom, each nevertheless made an in-court identification of the appellant at trial. After carefully reviewing the circumstances in the case at bar, we are of the opinion that the trial court correctly denied the appellant's motion to suppress. McGhee v. State, 48 Ala.App. 330, 264 So.2d 560.

### IV

■ The sufficiency of the State's evidence is presented for review as the appellant had both moved to exclude same and filed a motion for a new trial, which was denied. See Young v. State, 283 Ala. 676, 220 So.2d 843, and cases cited therein.

Here, the appellant's witnesses testified in effect to an "alibi" in that it was these witnesses' contention that the appellant was not physically present in the State of Alabama at the time of the occurrence of this offense, but rather was in California.

This issue was raised in Chamberlain v. State, 48 Ala.App. 254, 263 So.2d 709, wherein this Court stated:

"Where, as here, the appellant contends that he took no part whatever in the robbery and insists that he was not at the scene of the crime at the time of its commission, and offered testimony to

---

if California parole is granted. We will appreciate your comments.
    "s/ L. J. Pope. M. D.
        Acting Superintendent
        California Medical
        Facility
        Department of Corrections"

9(b)(1). Alabama replied on March 8, 1967:
" .  .  ." [I]t is yet our wish and intention to return Prince to this jurisdiction, when available, for trial upon two pending charges of Robbery.
      "s/ Earl C. Morgan
        District Attorney"

9(c). "To Earl C. Morgan, District Attorney, Birmingham, Alabama, dated February 2, 1971:

"Reference is made to the above named subject on whom your department has placed a hold.
"Be advised that subject appeared on the January 1971 Adult Authority calendar at which time he was granted a parole release date of February 22, 1971 and a discharge date of December 11, 1974. Special condition of 'Subject to Hold' was placed on the parole release.
"Please advise if your agents will be at this institution on Monday, February 22, 1971 to take custody, and of the approximate time of arrival.
"Your early reply will be appreciated.
      "s/ L. S. Nelson
        Warden"

support his alibi, such conflict in the evidence presents a jury question. McColston v. State, 20 Ala.App. 591, 104 So. 347.

"We are of the opinion that the evidence here is sufficient to sustain a conviction of robbery as against a defense of alibi. McColston v. State, supra; Dorch v. State, 40 Ala.App. 475, 115 So.2d 287." See also Zimmerman v. State, 272 So.2d 914 affirmed January 30, 1973.

## V

■ Following an extensive oral charge to which the appellant announced "Satisfied," a number of written requested charges were also given. As to the remaining refused charges, we have carefully examined each and find that such were properly refused as being either affirmative in nature, incorrect statements of applicable law, argumentative under the evidence, and therefore invasive of the province of the Jury, or were fully and substantially covered in the trial court's oral charge, or other given charges. Therefore, their refusals were proper. Title 7, Section 273, Code of Alabama 1940.

We have carefully reviewed this record of Three Volumes, containing 625 pages, as required by Title 15, Section 389, Code of Alabama 1940, and find same to be free from error. The judgment of the trial court is due to be and the same is hereby

Affirmed.

ALMON and HARRIS, JJ., concur.

CATES, P. J., concurs specially, per opinion.

DeCARLO, J., recuses himself.

CATES, Presiding Judge (concurring specially).

I concur only because I believe that Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443 (No. 71–6516, 1973) (holding that the warden of the detaining prison is the agent of the demanding state) is apparently not retrospective. To me the necessary corollary of *Braden* is that a demanding state must, on request for a speedy trial, call on its new found agent for the body of the prisoner so that he may be prosecuted (i. e., habeas corpus ad prosequendum) presumably in a court of the state where the prisoner is detained.

In this case Alabama merely wrote letters to California. After *Braden* this is no longer enough.

Some pertinent excerpts from *Braden* read:

"Read literally, the language of § 2241(a) [28 USC] requires nothing more than that the court issuing the writ have jurisdiction over the custodian. So long as the custodian can be reached by service of process, the court can issue a writ 'within its jurisdiction' requiring that the prisoner be brought before the court for a hearing on his claim, or requiring that he be released outright from custody, even if the prisoner himself is confined outside the court's territorial jurisdiction."

[Bracketed matter added.]

\*    \*    \*    \*    \*    \*

" \* \* \* The overruling of McNally v. Hill, [293 U.S. 131, 55 S.Ct. 24, 79 L.Ed. 238] *supra,* made it possible for prisoners in custody under one sentence to attack a sentence which they had not yet begun to serve. And it also enabled a petitioner held in one State to attack a detainer lodged against him by another State. In such a case, the State holding the prisoner in immediate confinement acts as agent for the demanding State, and the custodian State is presumably indifferent to the resolution of the prisoner's attack on the detainer. Here, for example, the petitioner is confined in Al-

abama, but his dispute is with the Commonwealth of Kentucky, not the State of Alabama. * * *"

*   *   *   *   *   *

"Mr. Justice Blackmun.

* * * *The present case is but one more step, with the Alabama warden now made the agent of the Commonwealth of Kentucky."*

(Italics added.)

## ON REHEARING

TYSON, Judge.

At counsel's urging, we have carefully considered this record again, and believe that the application for rehearing should be overruled. We add as additional footnotes [10, 11] to our opinion the following, and as this opinion is so extended, the application is overruled.

Opinion extended, application overruled.

CATES, P. J., and ALMON and HARRIS, JJ., concur.

DeCARLO, J., recuses self.

---

10. From Defendant's Exhibit No. 12 to Miss Lois K. Thomas, Attorney, Berkeley, California, dated November 22, 1967, Volume I, Record, page 54:

    "Alabama says that I committed two robberies there. This is untrue, and I never been convicted in Alabama for these charges. I don't what agreement has been made between the states. I never been before a judge, where any question of extradition was spoken of. And for that matter I have never signed any papers as to my agreeing upon going back to Alabama. The only times the questions of this nature were spoken to me was at my parole hearing, with the members of the parole board. At that time I made the statement that I would die before I be sent back to Alabama."

    .   .   .   .   .

    "Respectfully yours"

11. Further, from Cross Examination, Volume II, Record, page 300, the following:

    "Q (BY MR. BATCHELER:) I believe when we had the recess I had asked you a question with reference to the fact that up until around February the 22nd of 1970, or around January of 1971, that up until that time that you had refused to sign to 'go to hold' is that correct?
    "A That's correct, sir.
    "Q Then, somewhere close to February the 22nd, or 23rd, or 24th, or 25th, along about that time, you did sign saying that you would come to Alabama 'subject to hold,' is that correct?
    "A Yes, sir, that's correct. That was the only time I had a parole to come here, and I signed it. The other time it was—The parole system was different to go to hold than it is to 'come to hold
    .   .   .   .   .' "