328 So.2d 634
**Nelson HENRY, alias**

v.

**STATE.**

**7 Div. 396.**

Court of Criminal Appeals of Alabama.

Jan. 20, 1976.

Rehearing Denied March 9, 1976.

384

Sam L. Reames, Birmingham, for appellant.

William J. Baxley, Atty. Gen., Montgomery, and Randolph P. Reaves, Asst. Atty. Gen., Birmingham, for appellee, the State.

DeCARLO, Judge.

Sale of heroin; 6 years.

Howard Wayne Lowe was a member of the Jefferson County Sheriff's Department and was assigned to "U N D O", the United Narcotics Detail Operation. On September 9, 1974, about 3:00 P. M., Lowe went to the U.N.D.O. office in Birmingham. There he met Sgt. J. E. Smith, another member of the Jefferson County Sheriff's Department assigned to the same detail. Sgt. Smith gave the deputy $300 and then searched Lowe's car and person.

Lowe took this money and drove to the Stray Cat Club in Jefferson County where he met Bob Goldsmith, whom he had purchased heroin and cocaine from at various times. The two of them rode in Goldsmith's truck to the "U-Totem Quick Mart" where Goldsmith made a call at a nearby telephone booth. When Goldsmith returned, they drove to 1307 Altadena Rise Apartments in Shelby County.

They arrived about 6:15 P.M. and were admitted into the apartment by the appellant. Inside Lowe noticed a bearded man sitting on the couch in the living room but did not recognize him. They followed the appellant into a back bedroom where Lowe and Goldsmith introduced themselves and Nelson said he was called "Dooner." No one else was in the room. At this time appellant gave Lowe a paper-back magazine.

Lowe opened the magazine, and upon examining its contents, inquired whether it was any good and the price. Appellant replied that it could be cut one time and the cost was $300. Lowe paid the $300 to the appellant and then left with Goldsmith.

They returned to the Stray Cat parking lot. Lowe left Goldsmith and drove to the Ramada Inn in Hoover, Alabama, where he met Sgt. Smith and gave him the "magazine pack." There Smith made a "spot test" of the contents and placed it in an evidence envelope which each initialed.

During cross-examination, Deputy Lowe recalled working on a construction site with appellant but explained that at the time he went clean-shaven. On the day of the purchase, however, he wore a full beard.

Sgt. Smith testified that on September 9, 1974, he had followed Deputy Lowe and Goldsmith but preceded them to the Altadena Rise Apartments. He stated that when Lowe and Goldsmith arrived, he was

parked across the street in front of the 1307 address. He recalled it was raining when the two approached the apartment. Smith said the curtains were open and he saw appellant answer the door. He also observed two other people in the apartment, one a blond with a beard and another who could have been a female. It was about 6:25 P.M. when Lowe and Goldsmith left.

Sgt. Smith stated that the magazine pack Lowe turned over to him contained a white substance that his "marquid test" indicated was an opium drug. On September 11, 1974 the pack and its contents were given to Mr. Bailey of the State Toxicologist's Office in Birmingham.

On cross-examination, Sgt. Smith admitted he had sworn that the date of the sale was September 19, 1974, but that this was a typographical error. He explained that at the time a number of different warrants were being sought, and the correct date was September 9, 1974.

Arthur Fred Bailey, a criminologist with the State Department of Toxicology, identified the envelope he received from Sgt. Smith on September 11, 1974. He testified that it contained a magazine pack with 1.058 grams of powder and that 140 milligrams of the substance was pure heroin. Mr. Bailey stated that the envelope and its contents were kept under his care and custody, even though other members of the office had keys to the cabinet where the envelope had been stored.

Lt. William A. Maxwell of the Jefferson County Sheriff's Department was the first witness for the defense. Maxwell testified he was the immediate supervisor for Sgt. Smith and Deputy Lowe in the U.N.D.O. operation and that these officers initially said that the sale occurred on September 19, 1974. Upon further questioning, he acknowledged that the files concerning this alleged sale indicated a September 9, 1974, purchase date.

Phillip Black was called by the defense and stated that on September 9, 1974, he lived at 1307 Altadena Rise Apartments with Ronnie Culverson and the appellant. He recalled the day in question because it was the appellant's birthday and a party had been scheduled. .

The witness stated that between 6:00 and 7:00 P.M. his girl friend Jane Phillips, Ronnie Culverson, Debra Black and the appellant were in the apartment. Black maintained no one named Goldsmith was there and he did not see Deputy Lowe on that date. He explained that he knew Lowe and had worked with him on the same construction job.

He identified a stained glass panel which along with others had been placed in the living room windows of the apartment when they moved in. During further questioning, he admitted the panels were removable but contended that they were in place on September 9, 1974, and remained until they moved away.

Jane Phillips testified that she had gone to the appellant's birthday party on September 9, 1974, and had arrived about 1:00 or 1:30 P.M. It was a pretty day and around 2:00 P.M. they had gone swimming. Afterwards, they played tennis. She stated that no one came to the apartment between 6:00 and 7:00 P.M. and that she did not leave until a little before midnight. Miss Phillips also said the stained glass panels were in the apartment windows on that day.

Debra Blue was called next. She testified it was around lunch time when she arrived at the appellant's apartment on September 9, 1974, and they swam and played tennis. Miss Blue stated she was at the apartment between 6:00 and 7:00 P.M. and Officer Lowe did not come to the apartment. She recalled that, on the day in question, stained glass panels were sitting in the front windows of the apartment.

The appellant testified that he lived at 1307 Altadena Rise Apartments on September 9, 1974, and remembered the date because it was his twenty-second birthdate. It was a sunny morning and he had gone swimming and afterwards played tennis with Jane Phillips.

Henry said he had met Lowe when the deputy was a flagman on a construction site that appellant was working on in 1972. At the time appellant was a truck driver and during the five months of the construction job, Henry saw the deputy about twenty times a day.

He denied selling Lowe heroin or knowing anybody by the name of Robert Goldsmith. Henry stated that between 6:00 and 7:00 P.M. on the day in question, he was sitting in the living room with Phillip Black, Jane Phillips and Debra Blue. He denied seeing Lowe at all on that day. The only time he remembered seeing the deputy was on September 19, 1974, between 11:00 A.M. and 1:00 P.M., at his sister's apartment located at 1507 Sweet Apple Court.

Appellant further said the stained glass panels were placed in the apartment windows when he moved in and had remained until he moved away on September 16, 1974.

### I

The appellant was tried on the following indictment; omitting the formal parts, it reads:

"The Grand Jury of said County charge that before the finding of this Indictment

"Nelson Henry alias Nelson W. Henry Jr. whose true name is to the Grand Jury unknown, otherwise than as stated, unlawfully sell, furnish or give away heroin, a narcotic drug contrary to and in violation of the provision of Act 1407 of the 1971 Regular Session of the Alabama Legislature, otherwise known as the Alabama Uniform Control Substances Act and that such sale, furnishing or giving away took place subsequent to September 15, 1971 against the peace and dignity of the State of Alabama."

To this indictment appellant filed a motion to quash, raising the points that the indictment did not make a charge against him for violating a law of the State of Alabama, and that the Alabama Uniform Controlled Substance Act was not known as the Alabama Uniform Control Substance Act.

Counsel argues that the indictment was insufficient because of the omission of the verb *did*, before "sell, furnish . . ." and the use of the word "control" instead of *controlled*.

The rule followed for the interpretation and construction of an indictment is found in *Gary v. State*, 18 Ala.App. 367, 92 So. 533. It reads:

" 'If the sense of an indictment is clear, technical exceptions thereto should not be favorably regarded, and verbal inaccuracies or clerical errors which are explained and corrected by necessary intendment from other parts of the indictment, or errors of spelling not obscuring the sense, are not fatal.' "

In determining the merit of an objection because of false grammar, incorrect spelling or clerical error, a court should be satisfied that the tendency of the error was to mislead a person of common understanding reading the indictment, and leave in doubt what was intended to be charged. *Grant v. State*, 55 Ala. 201.

Neither the court, the counsel, the appellant, nor the jury could have been mislead by the defects complained of in the indictment.

After inspecting the foregoing indictment or on hearing it read, the appellant would have known it intended to charge him with selling heroin in violation of the Alabama Controlled Substances Act. And

the court would with certainty understand that such was the accusation.

■ The omission of the suffix *ed* from the word *controlled* and of the word *did* were clerical mistakes that did not render the indictment fatal. *Stallworth v. State,* 155 Ala. 14, 46 So. 518.

## II

■ The appellant was tried on the charge in the indictment and not on the warrant of arrest or its supporting affidavit. Any defect occurring in the arrest warrant or supporting affidavit regarding the sale date of the heroin was superseded by the latter indictment. *Toney v. State,* 15 Ala.App. 14, 72 So. 508.

■ Further, no error would have resulted in the omission of the *sale date* in the indictment. *Lowe v. State,* 48 Ala. App. 740, 267 So.2d 529.

Based on the foregoing, we cannot attribute the error necessary for reversal suggested by the appellant.

## III

Appellant maintains the court erred in allowing the testimony concerning Bob Goldsmith and the circumstances leading up to the alleged sale.

Counsel argues that the mention of Goldsmith and the prior purchases from him could well have led the jury to believe that appellant was involved in the sale of drugs.

We do not agree.

■ "[A]ntecedent circumstances which tend to shed light on the transaction or elucidate the facts or show preparation to commit the crime are always admissible in evidence." *Cartiledge v. State,* 52 Ala. App. 495, 294 So.2d 462.

■ Deletion of this background information would have made Deputy Lowe's testimony seem distorted, improbable or incredible. To strip away such antecedent circumstances would have resulted in an artificial or false picture of what occurred.

## IV

The appellant challenges the testimony concerning Sgt. Smith's meeting with Deputy Lowe before the alleged sale and Smith's testimony concerning what he saw while parked across from appellant's apartment.

■ In our review of the record, we did not find an objection interposed to the testimony when it was originally offered. Without an adverse ruling, this court is without authority to review. *Pritchett v. State,* 18 Ala.App. 628, 93 So. 341.

## V

It is suggested that the court erred when it permitted Deputy Smith to give the following testimony:

.     .     .     .     .     .

"Q. Who did the typing? The typing on the warrant?

"A. The little lady down here, in the Sheriff's Department here, I believe her name is Evans.

"Q. How many warrants did you obtain on this occasion that you were in here at Shelby County on February 7th, 1975?

"A. It was several, I don't remember how many, exactly.

"Q. Did you call the lady to check theirs?

"A. Yes, sir.

"Q. Did she correct them?

"MR. REAMS: We object, Your Honor.

"THE COURT: Objection overruled.

"A. Yes, sir.

"Q. What was her appearance on that day?

"A. She was highly nervous.

"MR. REAMS: We object, Your Honor. This has no bearing on that case and its . . . .

"THE COURT: Objection overruled."

This subject was first raised by the defense on cross-examination when counsel inquired:

\* \* \* \* \* \*

"Q. Mr. Smith, I will ask you to examine this and tell the Court, have you ever seen it before?

"A. (Witness, after examining the document) Yes, sir.

"Q. What is it?

"A. It's an arrest . . . it's a warrant for an arrest.

"Q. All right, now does it contain your signature?

"A. Yes, sir."

\* \* \* \* \* \*

"Q. You swore at that time that this alleged sale occurred [sic] on September the 19th, did you not?

"A. Yes, sir.

"Q. Now, isn't it a fact that you later learned that Mr. Henry had moved from that apartment before September the 9th, didn't you, of 1974 and therefore you changed you [sic] testimony to September the 9th, instead of September the 19th?[1]

"A. No, sir."

■ As shown by the foregoing portion of the record this matter was first gone into by the defense. Afterwards it became a proper ground of inquiry for the opposing side. *Craven v. State,* 22 Ala.App. 39, 111 So. 767.

VI

Appellant also insists that the proper predicate was not laid for the admission of the exhibit containing the heroin. Counsel contends that a break in the chain of custody was shown when the toxicologist admitted others in his office had keys to the cabinet where the package had been stored.

■ We believe that the chain of custody was sufficient to establish a jury question as to the accuracy of the exhibit's identification. *Green v. State,* 42 Ala.App. 439, 167 So.2d 694.

■ Nothing was shown that indicated the continuity of possession had been disturbed. Under these facts, ample assurance of the exhibit's authenticity and its analysis was shown.

VII

■ The continuance of criminal prosecution due to the absence of defense witnesses, or on the ground sufficient time was not had to locate certain persons, rests in the trial court's discretion. The exercise of that discretion will only be revised on a showing of abuse. *Pugh v. State,* 247 Ala. 535, 25 So.2d 417; *Smith v. State,* 282 Ala. 268, 210 So.2d 826.

■ This appellant was arrested on the above offense around February 11, 1975, and was arraigned with retained counsel on May 5, 1975. Trial began May 26, 1975 and was completed three days later. Under these facts it would seem that sufficient time for process was available to secure the appearance of necessary witnesses.

The abuse necessary for reversal was not made to appear here.

VIII

■ Denial of the motion for new trial was correct. The evidence recited above

---

1. Based on the recited evidence, defense counsel undoubtedly intended the question to involve a September 19th date rather than the September 9th date shown.

presented questions for the jury. *Prince v. State,* 50 Ala.App. 368, 279 So.2d 539.

No error appears in the record.

Affirmed.

TYSON, HARRIS and BOOKOUT, JJ., concur.

CATES, P. J., dissents.

CATES, Presiding Judge (dissenting).

I dissent because "sell" fails to charge when the defendant violated the statute, if ever. To me it is not self correcting.