This is an appeal from a judgment of conviction and sentence based upon a finding of a jury that defendant was guilty of robbery in the first degree.
Appellant's contention that the evidence was not sufficient to support the verdict and judgment is not well taken. According to the testimony of the alleged victim, he was employed on July 3, 1980, at the U-Totem and while he was so employed the following occurred:
 "A. Okay, two black people came in the store and just walked back toward the beer cooler in the back of the store and *Page 439 
just looked at the beer back there, trying to decide what they wanted or something and brought some up to the front and asked how much it was and then decided they didn't want that and took it back and got some more and brought it up and they did that about two or three times; and while they were doing this one of them bought a pack of cigarettes and then as I was ringing up the beer that they finally brought up there he pulled a gun on me and told me to step away from the counter and freeze and I did that and then he told me to open up the register and so I did that and then they led me back into the back to the storage room and they told me not to come out and put the stamp machine in front of the door, so that I couldn't get out and after a few minutes I opened the door and looked out to see if they were still there and they were there and they had started driving off and so I opened the door and ran toward the door of the store and got their tag number and just followed them out as they took off down the road. I ran out to the highway to see whether they went down toward the Parkway or turned on Blue Springs Road; and then I came back in and called the police.
 "Q. Robert, was that tag number that you gave the police was that EWG-807?
"A. Yes, sir.
". . . .
 "Q. Robert, I will ask you one more time, please, sir, if you will look at Mr. Nance and tell us, please, sir, is there any doubt in your mind that this is the person that pulled the pistol on you and took the money from the store that you were working at?
"A. It was him for sure."
The defendant and one of his friends testified they were together at the friend's house at the time of the robbery. The defendant emphatically denied he was a participant in any way in the robbery.
According to the undisputed evidence, robbery in the first degree occurred. A factual issue was presented as to whether defendant was one of the robbers.
State's Exhibit No. 1 consists of two photographs of each of six black males including the defendant. On each of the photographs is a placard bearing a number and the legend "POLICE DEPARTMENT HUNTSVILLE ALABAMA" or the like. The State showed that these photographs had been exhibited to the witness Robert Anderson by a police officer and that Anderson identified the photographs of the defendant as the robber with the gun. Thereupon, the following occurred:
 "MR. HOOPER: Your Honor, the State would offer into evidence State's Exhibit 1.
 "MR. RYAN: Your Honor, we object at this time as being unduly suggestive.
"THE COURT: Let me see, please, sir.
"Overrule. It's admitted."
State's Exhibit 1 should not have been offered in the condition we find it now. The photographs obviously come within the terminology of "mug shots" or "rogues gallery" pictures that can readily lead to the commission of reversible error.Rudolph v. State, Ala.Cr.App., 398 So.2d 386 (1981); Carlislev. State, Ala.Cr.App., 371 So.2d 975 (1979); Holsclaw v. State, Ala.Cr.App., 364 So.2d 378 (1978). Nevertheless, the objection made to the introduction of State's Exhibit 1 was not a valid ground of objection. The term "unduly suggestive" as employed in connection with the introduction of evidence relative to an extrajudicial photographic identification of a person as that of a defendant is referable to the question of the claimed suggestiveness or suggestion to be found on or in the photograph itself, or the circumstances of the extrajudicial identification by the photograph, that the photograph is in fact a photograph of the defendant. No such suggestiveness or suggestion is to be observed in any part of State's Exhibit 1 or in any of the circumstances of the extrajudicial photographic identification involved in this case. Although the trial court could well have sustained defendant's objection to the introduction in evidence of State's Exhibit 1 unless and until the "mug shot" appearance of the photograph had been satisfactorily *Page 440 
eliminated, it was not in error in overruling defendant's objection on the ground stated in the objection.
One of appellant's assertions of error pertains to a dispute between the parties on the trial as to the extent to which the State could go in cross-examining a witness for the defendant, Philip Haygood, which dispute commenced as follows:
 "Q. Now, Philip, you are presently charged, aren't you, with burglary third degree and theft of property first degree, aren't you?
"A. Yes, sir.
"MR. RYAN: Your Honor, could I object.
 "MR. HOOPER: Your Honor, I would like to offer proof and I have got Waters vs. The State here with me.
 "THE COURT: Ladies and gentlemen, go to the jury room for just a moment, please."
Thereupon, a colloquy occurred among the court and the attorneys as to whether defendant's objection was well taken. The court made it clear that it would sustain defendant's objection and upon the return of the jury to the courtroom the court said:
 "Ladies and Gentlemen, I have sustained the objection that was made prior to your leaving the room. You are to disregard the question that was asked and any answer that was given. Is there any member of the jury panel who cannot do so?"
The transcript shows that there was no response to the question asked the jury. As the action of the court was in favor of defendant, there is no merit in appellant's present contention that the "trial court erred in allowing the State to question a defense witness about whether or not he had been charged with burglary and theft when the charges against the witness were unrelated to Appellant's case."
Appellant presents a more difficult question by urging that the "cumulative effect of the various statements, arguments, and questions of the prosecutor [including the one just considered above] created a prejudicial atmosphere in the trial of Appellant" that requires a reversal. Included in the basis for this contention is the following additional part of the State's cross-examination of the witness Philip Haygood:
 "Q. All right, and have you seen him [defendant] up in the jail?
"A. Yeah, I have seen him up there.
"Q. When did you last see him?
"A. Today.
"Q. Are you both up there?
"A. Sir?
"MR. RYAN: I object.
"Q. Are you both up in the jail?
"MR. RYAN: I object, Your Honor.
"THE COURT: Overrule.
"Q. Are you both up in the jail, please sir?
"A. Yes, sir.
". . . .
 "Q. Philip, I will ask you again, please, sir, whether or not are you presently charged with an offense —
 "MR. RYAN: Your Honor, I object and move to exclude it.
 "MR. HOOPER: Your Honor, I think that the State has shown sufficiently that this witness could be biased and could be prejudiced against the State in his testimony and that he would have an ax to grind against the State, that he would be biased for the Defendant.
"MR. RYAN: Your Honor, may we approach the Bench?
"THE COURT: Overrule.
"MR. HOOPER: No further questions."
We do not approve the unfinished question by State's counsel, "Philip, I will ask you again, please, sir, whether or not are you presently charged with an offense —." It appears that the State was thereby attempting to introduce previous criminal charges, not convictions, against the witness of crimes involving moral turpitude, which is not admissible, and as to which the court had made a definite ruling against the State. Nevertheless, the imposition of an objection by defendant's counsel before the question had been completed hinders us from assaying with reasonable certainty *Page 441 
whether the incomplete question or the intended question was an intentional effort to introduce evidence contrary to the clear previous ruling of the court. Furthermore, the ruling of the court on the question at the time and the position of the parties are somewhat veiled in what appears to have been a probable overlapping of expression by one or more of them upon what one of the others was saying at the time and that understandably the court reporter could not reproduce the overlapped words. This is underscored by the apparent withdrawal of the incomplete question to which the objection was made, defendant's motion "to exclude it" when no answer is shown, and the appearance of the ruling of the court immediately after the question by defendant's counsel, "Your Honor, may we approach the Bench?" That defendant could hardly have been prejudiced by what is shown by the excerpt of the transcript under present consideration is to be noted by the fact that the witness had already testified on cross-examination that he was then an inmate of the jail in which the defendant was then confined, which almost certainly constituted evidence that he was charged with some criminal offense. A portion of the evidence on such cross-examination is as follows:
"Q. All right, and have you seen him up in the jail?
"A. Yeah, I have seen him up there.
"Q. When did you last see him?
"A. Today.
"Q. Are you both up there?
"A. Sir?
"MR. RYAN: I object.
"Q. Are you both up in the jail?
"MR. RYAN: I object, Your Honor.
"THE COURT: Overrule.
"Q. Are you both up in the jail, please sir?
"A. Yes, sir.
"Q. And when did you talk to him up there?
"A. Today, sometimes about one o'clock.
"Q. About one o'clock today?
"A. Yes, sir.
"Q. What did you talk about, Philip?
 "A. Nothing in particular, but he told me that I would have to come to court today that I was supposed to be coming to court as a witness or something.
"Q. As a witness or something?
"A. Yes, sir."
The court was not in error in overruling defendant's objections as noted in the last quoted part of the cross-examination of the witness. It is clearly within the appropriate sphere of cross-examination to interrogate a witness as to where and when he had talked with an adverse party, and there is no contention to the contrary.
As a part of the basis for appellant's argument that he is entitled to a reversal by reason of the "cumulative effect" of action by "the prosecutor" that "created a prejudicial atmosphere," appellant relies upon the following part of the cross-examination of another witness for defendant, Gilbert Stewart:
 "Q. How long have you known that your good buddy over here, Michael Anthony Nance, has been charged with this robbery?
"A. Well, I suppose about three or four months.
"Q. Three or four months?
"A. Yes, sir.
"Q. So you just let him languish in jail —
"MR. RYAN, Your Honor, I will object at this point.
"THE COURT: Sustain.
 "Q. Well, did you ever contact anybody, any police or anybody to tell them about this wrong man that was up there that was charged with this offense?
 "MR. RYAN: Your Honor, I am going to object again to counsel's improper statement.
"THE COURT: Sustain.
"I was contacted. —
 "THE COURT: You need not answer, sir. I sustained the objection.
 "A. I was contacted because Michael had indicated that he was with me and they contacted me.
"Q. And when did they contact you? *Page 442 
"A. Well, they contacted me this morning.
 "Q. Up until this morning have you told anybody about your ____
 "MR. RYAN: Your Honor, I am going to object to counsel's improper statement.
 "MR. HOOPER: Well, I ought to be able to cross-examine his witness.
 "THE COURT: Excuse me, Mr. Hooper. Do you have an objection?
"MR. RYAN: Yes, sir.
"THE COURT: What is the ground for your objection?
"MR. RYAN: May we approach the Bench, Your Honor?
"THE COURT: Yes, sir, you may.
 "(THEREUPON ensued an off the record discussion among the court, counsel for the State and counsel for the Defendant, following which the following proceedings were then had and done.)
 "Mr. Stewart, your testimony is that you have not told anybody about this up until this morning, is that correct?
"A. No, I had not.
"MR. HOOPER: All right, no further questions."
We find no contumacy in the cross-examination just quoted and no ruling of the court adverse to the defendant. It is unrelated to the charge as to the "cumulative effect" of "improper" conduct of the "prosecution."
Appellant includes also in his contention as to the "cumulative effect" of allegedly improper conduct the following part of the State's cross-examination of defendant:
 "Q. Michael, now we have heard Mr. Gilbert Stewart say that you were over at his house at the time of this alleged robbery. Did you ever tell anybody that?
"A. Yes, sir.
"Q. Who did you tell that to?
"A. I told my lawyer.
"Q. You told your lawyer?
"A. Yes, sir.
"Q. Did you tell the policeman when he arrested you?
"A. He didn't ask me that when he arrested me.
 "Q. Have you told any police officer since the time you were first arrested?
"A. I haven't talked to any.
 "Q. You haven't talked to any — Didn't you talk to Jimmy Crumrine?
"A. Yes, sir.
"Q. Here a few weeks ago?
 "A. Yes, sir, but he was trying to get me to say that I did rob the place.
"Q. And did you tell him about these alibi witnesses?
"A. He was not representing me.
"Q. So you kept all of that a secret, is that right?
"A. It wasn't no secret. My attorney knew.
 "Q. And yet you just called them up here this morning.
 "A. I had planned on calling them up here when I came to court.
 "Q. But they were only called this morning, is that correct?
 "MR. RYAN: Your Honor, I object again on the same grounds that we stated before.
"THE COURT: Overruled.
 "Q. Is that correct that you only called them this morning?
"A. Yes, sir."
The ruling of the court as shown in the last quoted portion of the transcript was not erroneous. We fail to find any improper conduct in the questions propounded to the witness, and they are not to be considered as properly includable in the contention as to the "cumulative effect" of improper conduct.
As a final basis of appellant's contention as to the "cumulative effect of the various statements, arguments, and questions of the prosecutor," appellant cites the following portion of the closing argument for the State:
"MR. RYAN: Your Honor, I object to that statement.
"THE COURT: Well, I sustain. *Page 443 
 "MR. RYAN: And for the record, Your Honor, the statement was that he was referring to Mr. Haygood as a jail bird, quote, unquote.
 "THE COURT: Well, excuse me, the record will not reflect that he was referring to Mr. Haygood as a jailbird, quote, unquote. There was a reference to Mr. Haygood as a witness and then Mr. Hooper followed that by saying that he could not review the statement of every jailbird that they filed [sic] in here. I sustain objection to that. Ladies and gentlemen, disregard it. Mr. Ryan sit down. Mr. Hooper continue."
It is to be observed, we think, from the complete picture we have given above as to the incidents forming the basis for appellant's contention as to the "cumulative" effect of conduct of the "prosecutor" that defendant did not in general fare badly by the rulings of the court as to defendant's objections. It also should be noted that at no time did defendant request a mistrial. By this we do not mean to imply that there was ever any occasion for the granting of a motion for a mistrial. Our consideration of all the transcript relied upon by appellant as a basis for his contention convinces us that the trial was not "conducted in an atmosphere of such prejudice as to violate Appellant's rights under the United States Constitution to due process and to a trial by an impartial jury as guaranteed by the Fifth, Sixth, and Fourteenth Amendments" and that "the cumulative effect of the various statements, arguments, and questions of the prosecutor" did not create "a prejudicial atmosphere in the trial of appellant," as contended by appellant.
When the case was called for trial at 11:30 A.M. June 15, 1981, the day it was set for trial, the following occurred:
 "THE COURT: Mr. Nance, Mr. Ryan informs me that you want another lawyer, is that correct?
"MR. NANCE: Yes, sir.
"THE COURT: What is the reason — out loud please.
 "MR. NANCE: Had a plea worked out on this case and then it didn't go through and now we've got to go to trial and I don't think I could be represented right.
"THE COURT: Sir?
 "MR. NANCE: I don't think I would be represented right.
"THE COURT: Mr. Ryan, you are appointed?
"MR. RYAN: Yes, sir.
"THE COURT: How long have you been on the case?
 "MR. RYAN: Two and a half weeks. The case had already been docketed for a trial when I was appointed, Judge.
 "THE COURT: All right, did you have a previous lawyer?
"MR. NANCE: Yes, sir.
"THE COURT: All right, who was that?
"MR. NANCE: Mr. McDaniel.
"THE COURT: Mr. McDaniel?
"MR. NANCE: Yes, sir.
"THE COURT: And he withdrew from representing you?
"MR. NANCE: Yes, sir.
"THE COURT: I deny your motion."
The record proper shows that at 2:19 P.M., June 12, 1981, a Friday, a motion for a continuance, signed by defendant's attorney, was filed, which motion stated:
 "Comes now the Defendant and moves this Honorable Court for a continuance of the above-styled cause from Monday, June 15, 1981, and as grounds therefor would show and represent unto the Court that the attorney for the defendant was not appointed to this case until May 25, 1981, at which time the case was already set down for trial and that said attorney has had inadequate time to prepare for said case and to contact witnesses for the Defendant."
What was held in Hillyer v. State, Ala.Cr.App., 351 So.2d 646,647 (1977) is controlling:
 "The continuance of a criminal prosecution due to the absence of defense witnesses or on the ground that sufficient time was not allowed to locate such persons, is a matter left to the trial court's discretion. The exercise of that discretion is revisable only upon positive showing *Page 444 
of clear abuse. Henry v. State, 57 Ala. App. 383, 328 So.2d 634 (1976); Clayton v. State, 45 Ala. App. 127, 226 So.2d 671 (1969); Huskey v. State, 129 Ala. 94, 29 So. 838 (1901)."
Applicable here is the following:
 "Hence, we consider it unnecessary to go beyond the general rule that a reversal because of the refusal of the trial judge to grant a continuance requires a positive demonstration of abuse of judicial discretion." Clayton v. State, supra, at 226 So.2d 672.
It cannot be said that, as a matter of law, the time that defendant's second counsel had to prepare for trial of the case was insufficient. What constitutes sufficient time for the preparation by defendant's counsel of criminal cases for trial varies greatly in accordance with the circumstances of the particular cases. We would prefer for more light to have been developed on the subject. In the absence thereof, we must conclude that the trial court did not abuse the discretion vested in it and that the denial of defendant's motion does not constitute reversible error.
The only other issue raised by appellant pertains to a part of the cross-examination of the defendant that we have previously discussed in considering appellant's contention as to "the cumulative effect of the various statements, arguments, and questions of the prosecutor." We quoted the particular portion of the cross-examination of the defendant relied upon by appellant in arguing his then considered contention. We think it sufficient now to quote again only the last three or four lines thereof:
 "Q. But they were only called this morning, is that correct?
 "MR. RYAN: Your Honor, I object again on the same grounds that we stated before.
"THE COURT: Overruled."
We now quote for the first time the part of the cross-examination of defendant that immediately followed that which we have just quoted above:
 "Q. Is that correct that you only called them this morning?
"A. Yes, sir."
It is to be noted that the question to which the objection was made was never answered. Although there seems to be little difference between the question that was substituted for the one to which an objection was made, it was incumbent upon defendant to object to the question that was answered in order to challenge successfully the introduction in evidence of the answer of the witness to the question that was substituted for the question to which no answer was given.
We find no error in the record prejudicial to defendant. The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court. The judgment of the trial court is hereby
AFFIRMED.
All the Judges concur except TYSON, J., who dissents without an opinion.