294 So.2d 462

**Ervin L. CARTLIDGE**

v.

**STATE.**

**5 Div. 164.**

Court of Criminal Appeals of Alabama.

March 5, 1974.

Rehearing Denied April 9, 1974.

Richard D. Lane, Auburn, for appellant.

497

William J. Baxley, Atty. Gen., and Sarah M. Greenhaw, Asst. Atty. Gen., for the State, appellee.

HARRIS, Judge.

Appellant was put to trial upon an indictment which, omitting the formal parts, reads as follows:

"* * * The Grand Jury of said County charge that before the finding of this indictment, Ervin L. Cartlidge, alias Truck Cartlidge, whose true christian name is otherwise unknown to the Grand Jury, on or about the 7th day of May, 1972, and subsequent to the effective date of the Alabama Uniform Controlled Substance Act, did unlawfully sell Heroin, a controlled substance, to Alex C. Smith, contrary to the provisions of the Alabama Uniform Controlled Substance Act, against the peace and dignity of the State of Alabama. * * *"

He was represented in the court below by retained counsel. At arraignment, in the presence of his attorney, he pleaded not guilty and not guilty by reason of insanity. When the case was called for trial, appellant withdrew the insanity plea and went to trial on the not guilty plea. The jury returned a verdict of guilty as charged in the indictment and assessed a fine of $15,000.00. Upon adjudication of guilt, in accordance with the verdict of the jury, the court as additional punishment sentenced appellant to fifteen years in the penitentiary. In open court, appellant gave notice of appeal and made known to the court that he was an indigent. The court ordered that he be furnished a free transcript and appointed trial counsel to represent him on this appeal.

The facts in the case are not complicated. On May 7, 1972, a part-time Deputy Sheriff of Lee County, Alex C. Smith, assigned to the narcotic detail was parked at

a dairy bar on the Auburn-Opelika Highway inside the city limits of Auburn. Smith was driven to this place in a Volkswagen bus by one Michael Watson, who was a paid informer for the Lee County Sheriff's Department. The time was between four and five o'clock on Sunday afternoon. While so parked, appellant approached the bus on the passenger side and asked Smith if he wanted to buy some heroin. Arrangements were made to conclude the sale and purchase of heroin at nine o'clock that night in a parking lot on Slaughter Avenue in Auburn. At the appointed time, Watson drove Smith to the agreed place and parked. The appellant came to the passenger side of the bus and handed Smith two small bags, and Smith gave him twenty dollars, got in an automobile and drove away. Smith put one of the cellophane bags, containing a white powdery substance, in his shirt pocket and placed the other cellophane bag on the front seat between him and the driver. Watson picked up this bag, and Smith never saw it again. Around ten o'clock that same night, Smith gave the Lee County Sheriff the bag he had in his possession. Before surrendering this bag to the Sheriff, Smith put it in an envelope, sealed it and wrote his initials "A.C.S." on all the openings to the envelope.

The Sheriff put his initials on the envelope and kept it in his possession over night, and the next morning, he carried it to the office and at eight o'clock he gave the sealed envelope to investigator Ronnie Watkins of the Sheriff's Department to deliver to the office of the State Toxicologist in Auburn. He testified that at the time he turned the envelope over to Watkins, it was in the same condition that it was in at the time he received it from Smith the night before.

Watkins testified, concerning the envelope that he received from the Sheriff, saying, "It was turned over to me in my office in the Lee County Sheriff's office at around 8:00 o'clock in the morning, and it was a business-type plain envelope, white in color, and had tape sealing it and it bore the initials, 'A.C.S.' and some pertinent information concerning the time and date and (the name of the) defendant."

Watkins further testified that he opened this envelope and found a small glassine bag, approximately one inch in length and approximately half an inch wide, marked flat, that contained a white powder. He put this bag in another envelope and labeled it with pertinent information, sealed it and initialed all openings, covered this with tape and placed it in the evidence file in a filing cabinet in the office and locked the cabinet. He personally delivered it to the laboratory of the State Toxicologist four or five days later. He said that the Chief Deputy was the only other person who had a key to this evidence filing cabinet; that during this four or five days, he had occasion to unlock the cabinet to place more evidence in it. This occurred several times each day and each time he observed the envelope containing the white powder in the same place that he originally put it. He removed the envelope to deliver it to the laboratory and stated that the seal he placed on it with his initials, "R.W." had not been broken nor was the envelope otherwise tampered with. He gave the envelope to Mr. Taylor Noggle in the laboratory of the State Toxicologist.

Mr. Noggle, whose qualifications were admitted by appellant, testified that he received the envelope with the initials "R. W." on it, and that it was sealed and taped when it came into his possession. He cut the envelope and removed the contents and conducted a laboratory analysis which determined the white powder to be heroin.

At the conclusion of the state's case, appellant made a motion to exclude the evidence on the ground the state had failed to prove a prima facie case. The court overruled the motion.

Appellant testified in his behalf. He testified that he had never seen Mr. Smith

before he saw him in the courtroom; that he was not present at the dairy bar on May 7, 1972, nor in the parking lot on Slaughter Avenue later that night, as claimed by Mr. Smith. In short, he denied that he had made a sale of heroin to Smith or anyone else. He said that at all times pertinent to the state's case he was at home watching a ballgame on television. The reason he was so positive about where he was on the afternoon and evening of May 7 was the fact that there was a championship game being played and he viewed it on television. He did not say, and we are not advised, what sports event is played in May to determine the champion. The jury must have been similarly unimpressed.

■ Appellant insists the trial court committed reversible error in permitting the District Attorney to interrogate him on cross-examination about an incident not connected with this case, in which an automobile driven by another individual was stopped by the officers in their quest to find heroin, at which time appellant was an occupant of the car. Appellent contends that this was prejudicial error by attempting to *involve* him in the commission of a felony, without any proof that he was guilty. Appellant gave a negative answer to the questions propounded by the District Attorney.

■ It is a well-established rule of law that reversible error cannot be predicated upon the overruling of an objection to a question which is not answered, or is answered in the negative. McGhee v. State, 41 Ala.App. 669, 149 So.2d 1; Leonard v. State, 36 Ala.App. 397, 58 So.2d 138, cert. den., 257 Ala. 239, 58 So.2d 142; Haisten v. State, 50 Ala.App. 504, 280 So.2d 209.

■■ Appellant contends the trial court fell into error in allowing evidence concerning negotiations for a drug sale several hours before the alleged sale was actually consummated. We do not agree. Antecedent circumstances which tend to shed light on the transaction or elucidate the facts or show preparation to commit the crime are always admissible in evidence. Mincy v. State, 262 Ala. 193, 78 So.2d 262; Harden v. State, 211 Ala. 656, 101 So. 442; Beaird v. State, 219 Ala. 46, 121 So. 38.

There is another rule applicable to the facts in this case as correctly stated in Smarr v. State, 260 Ala. 30, 68 So.2d 6, 10:

"The acts, declarations, and demeanor of an accused, before or after the offense, whether part of the res gestae or not, are admissible against him, but unless a part of the res gestae are not admissible for him."

See Willingham v. State, 261 Ala. 454, 74 So.2d 241; Espey v. State, 270 Ala. 669, 120 So.2d 904.

All occurrences connected with the commission of an offense may be received in evidence. Whatever tends to shed light on the main inquiry is, as a general rule admissible in evidence. Armor v. State, 63 Ala. 173; Mattison v. State, 55 Ala. 224; King v. State, 20 Ala.App. 121, 101 So. 89.

■ We have related the chain of possession of the white powder substance from the time it was purchased from appellant by Smith, who turned it over to the Sheriff, who gave it to the Deputy Investigator, who, in turn, delivered it to the laboratory of the State Toxicologist. We find no missing link in the chain of possession. We hold the identification and continuity of possession were sufficiently established to afford ample assurance of the authenticity of the drug and the analysis made by the Toxicologist. Powell v. State, 47 Ala.App. 582, 258 So.2d 923; Green v. State, 42 Ala.App. 439, 167 So.2d 694; Lackey v. State, 41 Ala.App. 46, 123 So.2d 186; Dennison v. State, 259 Ala. 424, 66 So.2d 552.

Appellant filed a motion for a new trial in which he questioned the sufficiency of

the evidence to sustain the verdict and judgment of conviction. He also alleged that the trial court erred in overruling his demurrer to the indictment, and erred in overruling his motion to exclude the state's evidence.

■■ The trial court's decision in denying a new trial on the ground of insufficiency of the evidence to support a conviction will not be reversed unless a preponderance of the evidence against the verdict is so decided, as to clearly convince the reviewing court that the lower court's decision is wrong and unjust. Nix v. State, 41 Ala.App. 37, 126 So.2d 121, cert. den., 271 Ala. 628, 126 So.2d 123.

From what we have said, we think there was ample evidence to support the judgment of the court below.

The trial court was not in error in overruling the demurrer to the indictment. In Gayden v. State, 38 Ala.App. 39, 80 So.2d 495, affirmed 262 Ala. 468, 80 So.2d 501, this court said:

"The constitutional right of an accused to demand the nature and cause of his accusation is not a technical right, but is fundamental and essential to the guaranty that no person shall be deprived of his liberty except by due process of law, nor be twice put in jeopardy for the same offense.

"An indictment should be sufficiently specific in its averments in four prime aspects to afford guaranty: (1) To identify the accusation or charge lest the accused should be tried for an offense different from that intended by the grand jury. (2) To enable the defendant to prepare for his defense. (3) That the judgment may inure to his subsequent protection and foreclose the possibility of being twice put in jeopardy for the same offense. (4) To enable the court, after conviction, to pronounce judgment on the record."

■ The necessary requirements to a good indictment were met in this case. The constitutional right to know the nature of the charge against an accused could not have been set forth in plainer language. Coshatt v. State, 37 Ala.App. 422, 69 So. 2d 877; Shiflett v. State, 37 Ala.App. 300, 67 So.2d 284.

In the light of our holding as to the sufficiency of the evidence to sustain the judgment of conviction, the trial court did not err in overruling appellant's motion to exclude the state's evidence.

■ Appellant requested a number of written charges and the record reflects that they were all marked "refused." However, it appears the court read to the jury two of appellant's written instructions in connection with the oral charge. Stated another way, the court "borrowed" these two charges and adopted them as part of the oral charge and then marked them "refused." Astute counsel recognized the court had "borrowed" these two charges and requested the court to mark them "given" so that the jury could carry these charges into the jury room for use during their deliberations. The court stated that he had already read them as part of his oral charge and refused counsel's request.

Title 7, Section 273, Code of Alabama 1940, provides, in pertinent part, that:

"Charges moved for by either party must be in writing, and must be given or refused in the terms in which they are written; and it is the duty of the judge to write 'given' or 'refused', as the case may be, on the document, and signs his name thereto; which thereby becomes a part of the record. Charges which are marked 'given' by the trial judge, *must be taken by the jury with them on retirement,* and those refused must be retained by the clerk. * * *" (Emphasis supplied)

The trial judge *literally* complied with the mandatory requirements of this statute, but he *defeated the spirit* of the mandate of this statute in *adopting* the two written charges as a part of the oral charge and then marked them "refused".

In Orr v. State, 117 Ala. 69, 23 So. 696, the Supreme Court in construing a section similar to section 273, supra, said, "What we do decide is that special charges requested in writing, and given, must be taken out by the jury; and the party has the right to have such charges before the jury for their examination and consideration, while charges marked 'Refused' do not go before the jury." See, also, Hart v. State, 21 Ala.App. 621, 111 So. 47.

But we are confronted with another sentence in section 273, supra, which provides, "The refusal of a charge, though a correct statement of the law, shall not be cause for a reversal on appeal if it appears the same rule of law was substantially and fairly given to the jury in the court's general charge or in charges given at the request of the parties."

The refused charges, stating the correct principles of law, were substantially and fairly covered in the court's oral charge, and there was no error in their refusal. We want to make it plain, however, that we do not *sanction* the practice pursued by the trial court in this case in "borrowing" appellant's two written special charges and adopting them as part of the oral charge, and then endorsing them "refused" so they could not go out with the jury for their examination during their deliberations. The plain mandate of section 273, supra, should never by circumvented in any such manner.

This case is due to be and the same is hereby affirmed.

Affirmed.

All the Judges concur.