405 So.2d 374 (1979)
Kelly COLLEY
v.
STATE.
4 Div. 648.
Court of Criminal Appeals of Alabama.
September 4, 1979.
After Remandment January 22, 1980.
On Rehearing February 26, 1980.
Rehearing Denied March 18, 1980.
*378 H. E. Lane, Thomas E. Haigh, and S. Mark Jordan, Enterprise, for appellant.
Charles A. Graddick, Atty. Gen. and J. Anthony McLain, Asst. Atty. Gen., for the State.
BOOKOUT, Judge.
Robbery with the aggravating circumstance of intentionally killing the victim; sentence: death by electrocution.
Some time around the hour of 3:00 and 3:15 p. m. on July 8, 1977, the appellant together with one Tommy Lewis (an indicted co-defendant) entered the service station of James O. Counts, Jr., better known as Junior Counts. They then robbed and intentionally killed him. Approximately thirty minutes before the fatal shooting, W. J. *379 Dukes, an employee of Graceville Oil Company who had filled Mr. Counts's gas tanks, observed two black males parked in front of the station. He identified Lewis as the passenger in the car as well as identifying the car as a 1974 light green Chevrolet Malibu. Later that evening the same car was seen in Montgomery by Officer R. B. Myland parked outside Lewis' residence with the appellant in the driver's seat. On July 12 the appellant was arrested in Montgomery for automobile theft. The arrest was based upon information supplied by a "cleared" suspect in an unrelated charge. The car proved to have been stolen from Troy, Alabama. The appellant was transported to the Pike County jail in Troy and held there until he became a suspect in the Counts killing. On July 16 Enterprise police, headed by Lt. Larry Baxter, assumed custody of the appellant and charged him with the robbery and intentional killing of Junior Counts under § 13-11-1, et seq., Code of Ala.1975, (Act No. 213, Acts of Ala.1975).

I
Appellant, on two separate occasions, petitioned the trial court for a change of venueboth before his trial, but once after the trial of his co-defendant Tommy Lewis. We need not review the first denial of appellant's motion where a subsequent motion for change of venue is filed and ruled on. Hawes v. State, 88 Ala. 37, 7 So. 302 (1890). However, due to the severity of the punishment, we shall do so.

A
Appellant presented extensive evidence and testimony in support of his initial motion for a change of venue. Included in the evidence received by the trial court were numerous newspaper articles recounting the killing of Mr. Counts. After a careful and deliberate review of each article and the testimony concerning each, we cannot find error in the trial court's ruling. The evidence presented did not illustrate the requisite prejudicial effect necessary to negate the ability of the appellant to receive an impartial trial and unbiased verdict. Additionally, no article contained any editorial comment. Each presented a factual account of the murder. Thus the appellant did not carry his burden in proving such prejudicial effect to the satisfaction of the trial court, for publicity alone is not sufficient to mandate a change of venue. McLaren v. State, Ala.Cr.App., 353 So.2d 24, cert. denied, Ala., 353 So.2d 35 (1977); Turk v. State, Ala.Cr.App., 348 So.2d 878 (1977); Peoples v. State, Ala.Cr.App., 338 So.2d 515 (1976); Jordan v. State, 56 Ala. App. 55, 318 So.2d 793, cert. denied, 294 Ala. 761, 318 So.2d 801 (1974).

B
On appellant's second motion for change of venue, made after the trial of his co-defendant Tommy Lewis, appellant presented seven witnesses from the community. Three testified that he could not receive a fair and impartial trial in Enterprise. Another trio testified that it could be possible for the appellant to receive a fair and impartial trial, and one testified that he thought the appellant had pled guilty. Appellant also introduced numerous newspaper articles in support of his motion. The State offered two witnesses from the community who were of the opinion that the appellant could receive a fair trial in Enterprise.
After a careful review of all the evidence presented, we are not persuaded by appellant's argument. As previously stated, the burden is upon the appellant to illustrate actual prejudice to such an extent that negation of his right to a fair and impartial trial occurred. McLaren, supra, and cases previously cited. Although appellant's evidence does indicate some influence upon the community by the pretrial publicity of his co-defendant's trial, it does not go so far as to illustrate a completely biased public. This is evidenced from the fact that three of appellant's own witnesses stated they did not have opinions so fixed that they could not listen to the evidence and law and render an impartial decision. Consequently, the trial court's denial of appellant's motion was not erroneous.

*380 C
Appellant offers as his third contention on this issue the argument that since he was indigent he could not transport, house, and feed his witnesses who had to travel from Montgomery to Enterprise and, therefore, should have been granted a change of venue. Title 15, § 91, Code of Ala.1940, Recompiled 1958, (now § 15-2-2, Code of Ala.1975) lays venue of a public offense in the county in which the offense was committed. Title 15, §§ 289-296, Code of Ala.1940, Recompiled 1958, (now § 12-21-240, et seq., Code of Ala.1975) grants the appellant the power to subpoena witnesses and grants the appellant certain remedies for securing attendance of his witnesses. In fact, the trial court issued attachments for several of appellant's witnesses. It therefore cannot be said that the appellant was without legal recourse to compel attendance of his witnesses. Venue may not be shifted from county to county merely for the convenience of witnesses. Therefore, this contention in support of a change of venue is without merit.

II
Appellant contends that the trial court erred to reversal in denying his motion for a psychiatric examination to determine his sanity at the time of the crime and his competency to stand trial. Appellant bases his argument primarily on the fact that he was indigent and therefore unable to procure the examination himself. Secondarily, appellant asserts that the trial court should not have denied his counsel the right to testify as to his mental condition during the hearing on that motion.
The trial court conducted a competency hearing to determine whether or not to order a psychiatric examination of the appellant. Appellant's only witness was Al Smith, an Alabama Pardon and Parole officer, who had conducted an investigation concerning an application for youthful offender status for the appellant. Officer Smith's testimony indicated that the appellant had used various drugs, drank approximately one case of beer a week, and frequently drank whiskey. Officer Smith's interview revealed that the appellant had above average responses to questions concerning dates, times, places, and people. He also testified that in his opinion the appellant was sane.

A
Title 15, §§ 425, 426, and 428, Code of Ala.1950, Recompiled 1958, (now §§ 15-16-20, -21, -22, Code of Ala.1975) provides similar methods by which a trial court may inquire into the sanity of a defendant before his trial. However, only when the evidence raises a reasonable doubt as to a defendant's sanity does such an inquiry become mandatory. Wheeler v. State, 47 Ala. App. 457, 256 So.2d 197 (1971); Edgerson v. State, 53 Ala.App. 581, 302 So.2d 556 (1974). Furthermore, the appellant has no right to receive a mental examination whenever he requests one. Pace v. State, 284 Ala. 585, 226 So.2d 645 (1969). Absent such a right, the motion is directed to the sound discretion of the trial court which is the proper screening agent for such. Dixon v. State, Ala.Cr.App., 357 So.2d 690 (1978). Appellant's evidence was not so compelling as to render the denial of his motion an abuse of discretion regardless of his indigency. Pace, supra; Gales v. State, Ala.Cr.App., 338 So.2d 436, 438, cert. denied, Ala., 338 So.2d 438 (1976); Bertrand v. State, 46 Ala. App. 7, 237 So.2d 118 (1970).

B
Secondly, appellant contends that he was denied the opportunity to present evidence in support of his motion when the trial court forced one of his counsel to step down from the witness stand. The district attorney objected when appellant's counsel took the stand. The trial court, in response to the objection and after informing the attorney of certain ethical considerations, stated:
"THE COURT: ... I am not telling this lawyer to get off the stand. I want him to know the position he is getting in.
"MR. HAIGH: Were you aware of the Maund case and its holdings?
*381 "MR. JORDAN: No, sir, I wasn't.
"MR. HAIGH: In that case with the District Attorney's permission we ask that Mr. Jordan step down.
"THE COURT: I am not telling him to get off the stand, but the ruling is clear that if you know in advance you are going to take the stand they say you should either get out or not participate. Now, that gives you a lever to get out, but we are not going to let you out.
"MR. HAIGH: We'd like to call Mr. Al Smith.
"THE COURT: Before we go any further let the record show that I have not ruled on the District Attorney's objection to the testimony of Mr. Jordan. I merely pointed out the holding of the case and counsel withdrew himself from the stand, right?
"MR. JORDAN: Yes, sir."
Maund v. State, 254 Ala. 452, 48 So.2d 553 (1950), only applies to prosecuting attorneys testifying and does not refer to the propriety of a defense attorney testifying. However, the above quoted colloquy indicates that the trial court at no time forced nor demanded appellant's counsel to step down. The attorney voluntarily stepped down without raising any objection. No reversible error resulted.

III
Appellant asserts as error the excusal of prospective jurors from the special and regular venire outside his presence and without his agreement or knowledge. He also asserts that the local act granting such power of excusal violates both the Fifth and Fourteenth Amendments to the United States Constitution as well as Article I, Section 6, Constitution of Alabama 1901.
In Lassiter v. State, 36 Ala.App. 695, 63 So.2d 222 (1953), we held that (in a venire pursuant to what is now § 12-16-120, Code of Ala.1975) a defendant in a capital case has an absolute right to have excuses from jury service heard and determined in his presence. In the instant case the trial court relied on the authority of a local act, Act No. 52, Acts of Ala.1971, p. 4260, [set out in Title 13, § 125(49j), Code of Ala.1940 (Supp.1973)] which provides:
"In all capital cases where trial by a jury is held before the circuit judge of the twelfth judicial circuit of Alabama, any circuit judge of the twelfth judicial circuit of Alabama is authorized to excuse from service any prospective juror outside the presence of the defendant or defendants provided said juror has a legal excuse for being excused and it shall be within the discretion of the said circuit judge to determine whether said prospective juror's excuse is legal; provided that in no case shall there be a smaller number of jurors to select from in said capital cases than provided by law."
Appellant contends that the above act is no longer the law since the imposition of the 1975 Code of Ala. However, § 1-1-10, Code of Ala.1975, specifically exempts from repeal "... statutes in effect on the effective date of this Code which apply to one or more judicial circuits of the state, whether by specific reference thereto, or the basis of population or by some other method of identification or classification...." Consequently, the authority under which the trial court acted was not repealed.
As to the constitutionality of Act No. 52, supra, Ex parte Bracewell (Ala. 1979) governs. There, ruling on an identical question from the Circuit Court of Covington County, the Alabama Supreme Court said:
"Bracewell contends that this local act violates § 105 of the Constitution of 1901 which prohibits local laws in cases which are provided for by general law. Under the rules announced in Peddycoart v. Birmingham, 354 So.2d 808 (Ala.1978), Bracewell's analysis is correct. We note, however, that the ruling in Peddycoart was specifically made prospective. `With regard to legislation heretofore enacted, the validity of which is challenged, this Court will apply the rules which it has heretofore applied in similar cases.' 354 So.2d at 814. Thus the validity of the local act is controlled by Stewart v. State, *382 245 Ala. 511, 17 So.2d 871 (1944), and Thigpen v. State, 49 Ala.App. 233, 270 So.2d 666 (1972), which held that similar acts applying to Jefferson and Mobile counties were constitutional. The trial court did not commit error in excusing these jurors outside the presence of the defendant."
Therefore, the trial court's excusal of prospective jurors without the presence of the appellant was not error, and the trial court properly denied appellant's motions for a continuance and new trial based upon such.

IV
The appellant contends that his statement given to Lt. Baxter on July 16, 1977, was inadmissible due to the length of time he was held without the assistance of counsel. Before reciting the facts presented to the trial court for its determination as to the admissibility of the confession, a more complete chronology of events is necessary in order to place those facts in their proper perspective. Note, however, that with the exception of Officer Myland's testimony, which had previously been received into evidence by the court, the remainder of the below recited testimony was presented during the admissibility hearing.
Mr. Counts was killed around 3:00 p. m. on July 8, 1977. On the same evening Officer R.B. Myland of the Montgomery Police Department, in observing a possible suspect in an unrelated crime, saw Lewis, the appellant, and others in a 1974 light green Chevrolet Malibu parked in front of Lewis' house. Earlier, over the local radio, he heard of a car similar to the one appellant was driving having been used in the killing of Mr. Counts. On July 10 he and his partner prepared a report for Lt. Don Terry of the Montgomery Police Department concerning the automobile. Their report did not mention appellant by name, but did mention Lewis. The report was not read until July 14, two days after the appellant's arrest. Around 6:30 a. m. on July 12, Corporal Ed Alford of the Montgomery Police Department, on information supplied to him by a suspect in an unrelated case, went to the residence of the appellant and arrested him for automobile theft. At that time Corporal Alford did not know the contents of Officer Myland's report to Lt. Terry concerning the connection of the stolen vehicle in the Counts killing. On the same day the appellant was transported to Troy, Alabama, by Lt. James McClendon of the Troy Police Department to face charges of burglary. Lt. McClendon likewise had no knowledge of Officer Myland's report. The appellant was advised of his Miranda rights in Troy by Lt. McClendon. He subsequently signed a waiver form.
On July 14 the appellant was transported to Montgomery to face arraignment on various charges unrelated to the instant case. Afterwards he was returned to the Pike County jail in Troy. On July 15, after again being apprised of his rights, Lt. McClendon questioned the appellant concerning the Counts killing wherein appellant implicated himself. No recording or transcript was made of that statement. At the time the appellant was questioned, Lt. McClendon had Tommy Lewis in custody and had a statement from him concerning the Counts killing. However, Lt. McClendon testified that he did not think the appellant was aware that Lewis had been arrested, and further that he did not inform the appellant that Lewis had made a statement.
On July 16 Lt. Larry Baxter and others of the Enterprise Police Department took custody of the appellant and transported him to Enterprise. In Enterprise Lt. Baxter took an inculpatory statement from the appellant. The statement, conducted in two main sessions, consisted of a question and answer colloquy in conjunction with a recreation of the events of July 8 at the scene. No recording or transcript of the statement was made by Lt. Baxter. During the morning session, Corporal Steve Weekly of the Alabama Department of Public Safety advised the appellant of his Miranda rights although there is no evidence that a waiver of rights form was signed. Around 3:10 p. m. the afternoon session began with Sgt. Dennis Hobbs of the Enterprise Police Department reading *383 and explaining appellant's rights to him. The appellant signed a waiver form at this time. During the interrogation of July 16, Lt. Baxter was aware that Tommy Lewis had confessed to the Counts killing. He testified that the only mention of this was to apprise the appellant that Lewis had confessed although he did not inform the appellant personally.
The transfer of custody of the appellant from the Troy to the Enterprise police and his confession occurred on the same day, July 16. On this date the appellant was informed of his Miranda rights on two separate occasions with a waiver of rights form being signed with the second warning. Prior to this, the appellant had been given his Miranda rights by the Troy police on two separate occasions, July 12 when the appellant signed a waiver of rights form and July 15. Between those two dates, on July 14, the appellant had been arraigned in Montgomery on unrelated charges. The record does not reflect whether counsel was appointed to represent the appellant at that time. Additionally, the record does not reflect whether or not the Montgomery police apprised the appellant of his rights when he was initially arrested on the automobile theft charge on July 12.
Finally, the appellant was arraigned on July 26 on the capital felony charge wherein appellant's counsel was appointed. Had appellant been in custody ten days on the instant charge before he confessed rather than both occurring on the same day, a stronger argument for involuntariness and an unintelligent waiver could have been made. However, the number of times the appellant was informed of his Miranda rights, in addition to the fact that the appellant had presumably been appointed counsel in Montgomery (in his brief he admits this although the record does not reflect it), indicates that the appellant was aware of his constitutional right to assistance of counsel and knowingly and intelligently waived that right. Consequently, the July 16 statement was admitted into evidence after the proper predicate as to voluntariness and a Miranda warning had been established. See also: Ex parte Thomas, Ala., 373 So.2d 1167 (1979).

V
Appellant contends that the action of the trial court in disallowing him to impeach a State's witness denied the jury the opportunity to determine the credibility of the witness thereby depriving him of an impartial jury trial. Appellant attempted to impeach the testimony of Joseph Dukes wherein he had identified a vehicle at the Counts service station shortly before the killing. The vehicle was seen later that evening in Montgomery by Officer Myland being driven by the appellant.
The appellant, during cross-examination of Mr. Dukes, laid the proper predicate to impeach him on a prior inconsistent statement made on August 18, 1977, when he had given a different description of the get-away vehicle. Subsequently, the appellant called Paul Young, Jr., a law clerk to his counsel, as a defense witness to impeach Mr. Dukes' testimony. After the trial court sustained several State objections to improper questions, the district attorney objected on the ground that the proper predicate had not been established for receipt of Young's testimony into evidence. An off-the-record discussion ensued after which appellant's counsel stated that he had no further questions.
It has long been the rule in this state that an adverse ruling is a preliminary requirement to preservation of error and appellate review. Van Antwerp v. State, Ala.Cr.App., 358 So.2d 782, cert. denied, Ala., 358 So.2d 791 (1978). Absent an adverse ruling, the issue raised by the objection is not properly presented before the reviewing court. Consequently, review on appeal is limited to matters on which rulings are invoked in the trial court, notwithstanding our statutory duty to search the record for error. Scruggs v. State, Ala.Cr. App., 359 So.2d 836, cert. denied, Ala., 359 So.2d 843 (1978); § 12-22-240, Code of Ala. 1975; Harris v. State, Ala.Cr.App., 347 So.2d 1363, cert. denied, Ala., 347 So.2d 1368 (1977). See also: 6B Alabama Digest, Criminal Law § 1045.
*384 Neither does the "plain error" rule apply here. ARAP, Rule 45A. For that rule to apply there must first be error, and it must be plainly visible in the record. Here, counsel went into an off-the-record discussion after the State's objection. We cannot tell from the record whether the trial court ruled against the appellant, for the appellant, or whether the court ruled at all. The record only shows that after the discussion counsel for appellant stated that he had no further questions. The record simply fails to apprise us of what occurred in that instance. Therefore, there is nothing presented for our review concerning this contention.

VI
Appellant raises the issue of the constitutionality of the Alabama Death Penalty Act, especially its presentencing procedure. This argument raises the same points addressed in Jacobs v. State, Ala.Cr. App., 361 So.2d 607 (1977), affirmed, Ala., 361 So.2d 640 (1978), cert. denied 439 U.S. 1122, 99 S.Ct. 1034, 59 L.Ed.2d 83 (1979). We see no need to discuss further those points as we continue to adhere to the views therein expressed. See also: Evans v. Britton, 472 F.Supp. 707, (No. 79-0200H, S.D. Ala., Ms. June 12, 1979) comparatively discussing the Alabama, Florida, Georgia, and Louisiana death penalty acts.

VII
The appellant was convicted under Count I of a three count indictment for robbery when the victim is intentionally killed by the defendant. He contends that his conviction under that count was erroneous in that the element of intent was supplied by the felony-murder doctrine in violation of § 13-11-2(b) which provides: "Evidence of intent under this section shall not be supplied by the felony-murder doctrine."
Although the felony-murder doctrine may not be used to prove intent in a capital felony case, a conviction may nevertheless be had under the accomplice statute, § 13-9-1, Code of Ala.1975, which states:
"The distinction between an accessory before the fact and a principal, between principals in the first and second degrees, in cases of felony, is abolished; and all persons concerned in the commission of a felony, whether they directly commit the act constituting the offense or aid or abet in its commission, though not present, must hereafter be indicted, tried and punished as principals, as in the case of misdemeanors." (Emphasis supplied.)
This issue was discussed in detail in a special concurrence in Ritter v. State, Ala.Cr. App., 375 So.2d 266 (1978), and by the Alabama Supreme Court in Ritter v. State, Ala., 375 So.2d 270 (1979).
The question here is whether there was sufficient evidence to prove that the appellant was an accomplice of his co-defendant, Tommy Lewis, in not only the robbery but also in the killing. We think there was. The appellant was driving the vehicle in which both defendants departed the scene. The appellant, in his confession, admits to planning the robbery with Lewis. The appellant stated that rather than merely stealing some gasoline they decided to "case" the place and pull a "sham" by appearing as if they were going to purchase some items. The appellant was a party to and an active participant in planning and executing this agreement. Furthermore, after Lewis had shot Mr. Counts, the appellant, positioned at the doorway within arm's reach of the victim, bent down and removed the billfold from Mr. Counts's person.
The Alabama Supreme Court in Ritter, supra, stated:
"... The significant distinction between use of the felony-murder doctrine and use of accomplice liability in this context is that accomplice liability requires a greater showing of the defendant's individual intent. Under Alabama law, in order to hold an individual as an accomplice the State must prove that he aided and abetted in the crime, terms which `"comprehend all assistance rendered by acts or words of encouragement or support or presence, actual or constructive, to render assistance should it become necessary."' *385 Jones v. State, 174 Ala. 53, 57 So. 31 (1911). As we noted in Jones, key elements of accomplice liability are encouragement or presence `with a view to render aid should it become necessary.' When liability is predicated on the latter it is essential that the principal be aware of the accomplice's support and willingness to lend assistance. Jones, supra. Thus an accomplice, while he may not have actually committed the crime by delivering the blow or firing the shot, has sanctioned and facilitated the crime so that his culpability is comparable to that of the principal...."
From the evidence we find that the appellant was more than a mere driver of the "get-away car" executing a planned robbery but unaware that his co-defendant was going to kill the victim. The evidence here is ample for a jury to have found that the appellant was an active participant in the robbery itself, that he was present with a view to render aid should it become necessary, and that his assistance, aid, and support continued beyond the killing when he reached down and took the billfold off the victim after the shooting. Clearly, he was an accomplice to not only the robbery but also the intentional killing of Mr. Counts. Howell v. State, Ala.Cr.App., 339 So.2d 138 (1976).

VIII
Appellant contends that the local law establishing the Coffee County Jury Board, under which the grand and petit juries were drawn, is unconstitutional or was abolished by the 1975 Code of Alabama. In the alternative, the appellant asserts that if the local act is not unconstitutional nor abolished then its application denied him due process and equal protection of the law.

A
Appellant asserts that local Act No. 572, Acts of Alabama 1953, p. 813, which established a jury board in lieu of a jury commission under Title 30, §§ 8-29, Code of Ala. 1940, Recompiled 1958, is unconstitutional under §§ 104-106 of the Constitution of Alabama 1901.
Under § 104, thirty-one enumerated classes of special, private, or local laws are prohibited. However, there is no designation within that section to prohibit the legislature from passing an act such as No. 572.
Section 105 prohibits the enactment of special, private, or local laws in any case which is provided for by a general law. The Alabama Supreme Court was faced with a similar situation in Parrish v. Stembridge, Ala., 337 So.2d 754 (1976). In that case the general law established the office of license inspector for each county in the state. However, by local act the office of license inspector was abolished in Houston County, and the position of license commissioner was created in lieu thereof. The enactment of the local act was challenged pursuant to § 105, supra. The circuit court upheld the constitutionality of the local act, and the Supreme Court affirmed its judgment.
The Alabama Supreme Court stated that § 105, supra, has not been held to prohibit local legislation merely because the general law deals with the same subject matter. That Court stated that the question is whether the local act and the general act contain substantive differences, not in detail merely. After finding that substantive differences did exist between the local act and the general law, the Court went on to state:
"... As has often been said, when, in the judgment of the legislature, local needs demand additional or supplemental laws substantially different from the general law, the legislature has the power and authority to enact them....."
In the instant case, substantive differences exist between the general law and the local act. The general law provides for a jury commission composed of three members in every county of the state. The local act in question creates a jury board for Coffee County composed of eight members and abolishes the county jury commission. The general law provides that members of a *386 county jury commission be appointed by the governor whereas the local act provides that appointments be made by the circuit judge, probate judge, and tax assessor. The general and local laws provide for different terms of office and different times for meetings. The provisions for appointment of a clerk differ between the general and local act also. The local act, however, requires the jury board to perform the duties required by law of jury commissions. Likewise, the clerk of the jury board is required to perform the duties prescribed by law for clerks of jury commissions.
It is obvious in comparing the general law and local act in question that in the judgment of the legislature the local needs of Coffee County demanded additional or supplemental laws substantially different from the general law pertaining to the composition and certain duties of the jury commissions. The legislature therefore constitutionally exercised its judgment. State v. Steele, 263 Ala. 16, 81 So.2d 542 (1955).
Additionally, the Alabama Court of Civil Appeals in Norris v. Seibels, Ala.Civ.App., 353 So.2d 1160, 1164, reversed on other grounds, Ala., 353 So.2d 1165 (1977), stated: "Sec. 105 does not inhibit the passage of local laws on subjects not prohibited by Sec. 104 of the Constitution merely because the local law is different and works a partial repeal of the general laws of the state in the territory affected." Consequently, enactment of Act No. 572, supra, is not violative of §§ 104 and 105 of the Constitution of Alabama 1901.
Section 106 of the Constitution requires publication of any local law not enumerated in § 104 before it may be enacted. A local law enacted in noncompliance with § 106 may be voided by the Alabama courts. Act No. 572, supra, is not unconstitutional in violation of § 106, supra, in that the requisite constitutional formalities of publication were complied with. Alabama Senate Journal 1953, Vol. 2, p. 1060.

B
Appellant asserts that Act No. 572 was abolished by the enactment of the 1975 Code with its provisions concerning jury commissions, § 12-16-30, et seq. The 1975 Code, however, did not become effective until October 31, 1977. Act No. 20, Acts of Ala.1977, approved February 15, 1977, and Proclamation by the Governor, Vol. 1, p. vi, Code of Ala.1975. Thus, the effective date of the Code was well after the commission of the crime, appellant's arrest, his appointment of counsel, and the grand jury indictment. Section 1-1-9 of the new Code provides in pertinent part:
"This Code shall not ... affect any prosecution now commenced, or which shall be hereafter commenced, for any offense already committed. As to all such cases, the laws in force at the adoption of this Code shall continue in force...."
Another point overlooked by the appellant is the fact that the very Code which appellant contends abolishes Act No. 572 states: "The foregoing provisions of this section shall not repeal, nor be construed to repeal, local, private or special statutes." Section 1-1-10, Code of Ala.1975. Consequently, local Act No. 572 was not abolished by the enactment of the 1975 Code of Ala.

C
The appellant contends that if Act No. 572, supra, was neither abolished nor held to be unconstitutional then its application by the Coffee County Jury Board denied him due process and equal protection of the law. More specifically, the question is whether or not the jury board substantially complied with the letter and spirit of Title 30, §§ 8-29, Code of Ala. 1940, as amended, and in so doing adequately provided the appellant with due process and equal protection of the law.
Appellant alleges that the board's action in not meeting in 1977 as required by Title 30, § 20, supra, resulted in a jury list so incomplete that it excluded a disproportionate number of eligible persons from the jury role, thereby precluding him from receiving a fair and impartial trial. He further submits that the clerk of the jury board had resigned without being replaced *387 before his trial commenced and that, when in office, the clerk did not visit each precinct as required by Title 30, § 24, supra.
Section 5 of Act No. 572, supra, states in pertinent part:
"The jury board shall meet at such times and places as its chairman may direct.... The board shall perform the duties required by law of jury commissions and shall have and exercise the powers and authority of such commissions."
Section 8 of that Act states: "All laws or parts of laws which conflict with this Act are repealed." It is apparent that § 5 of the Act, supra, supersedes the annual meeting requirement of Title 30, § 20, without effecting the remaining statutory duties.
Appellant argues that the jury roll from which his venire was chosen was incomplete in that it did not properly include young, female, and black persons or unregistered voters. Testimony elicited from four board members indicates that they compiled their list from such sources as the city directory, registered voter lists, and from lists of names submitted by key people in the community. There was no intentional designation of age, sex, or race on such lists. It was also illustrated that names of potential jurors were solicited from black and minority leaders. Minority groups provided many of their members' names for the jury roll. Furthermore, the testimony displayed no discriminatory effort on the part of the board to exclude any class of persons eligible to serve as jurors. Numerous cases hold that the jury roll need not list each and every person eligible to serve as a juror, absent fraud or purposeful discrimination against any one class of persons. Smith v. State, Ala.Cr.App., 364 So.2d 1 (1978) and cases cited therein. Taken as a whole, the evidence does not illustrate such fraud or discrimination in the actions of the jury board as to warrant reversal of this cause.
Appellant asserts that the resignation of the clerk of the jury board resulted in ineffective administration and improper compilation of the jury roll. Testimony elicited by the appellant from Neal Nichols, a member of the Coffee County Jury Board, indicated that the board's clerk had recently resigned and that a replacement would be filling the vacancy shortly. In light of the fact that the names on the jury roll and in the jury box for appellant's trial were compiled before the clerk's resignation, no prejudice can be predicated upon that subsequent resignation. We note that the district attorney stated in the record that the clerk of the circuit court had been handling the jury roll until a replacement for the jury board clerk could be found. Without commenting upon the legal weight to be accorded that statement, such an alternative procedure is provided for in Title 30, § 15, in counties having 60,000 population or less. The latest official census shows Coffee County to have a population of 34,872. 1 U.S. Dept. of Commerce, Characteristics of the Population, pt. 2, at 18 (1973).
The appellant's final argument concerning the jury board is that the failure of the clerk to visit each precinct at least once a year as provided by Title 30, § 24, supra, resulted in the board improperly executing their statutory duties. The record is void as to whether or not the clerk of the jury board visited each precinct at least once a year. Consequently, we cannot determine the validity of the appellant's contention in this regard. See also: Smith v. State, supra.

IX
Appellant raises two questions concerning the trial court's charge to the jury. First, the appellant contends that the trial court erred in quoting verbatim two of his refused requested charges in its oral charge; and, secondly, when the trial court repeated a portion of its charge at the request of the jury that portion covered by one of the refused charges was erroneously omitted.

A
The trial court included in its oral charge to the jury the following matter which is verbatim the matter contained in the appellant's refused Requested Charges 3 and 2, respectively:

*388 "... The Court charges the jury that if they believe from the evidence that the defendant, Kelly Colley, together with Tommy Lewis were passing near the store of James O. Counts, Jr., on the afternoon of the robbery, with the aggravating circumstance of intentionally killing James O. Counts, Jr., as said to have been done and said offense was committed by Tommy Lewis, from causes having no connection with the common object for which they happened to be there, the responsibility for such offense rests solely on the actual perpetrator of the crime, and you, the Jury, cannot find Defendant, Kelly Colley, guilty simply because he happened to be present at the time the offense was committed.
"I further charge the Jury that the evidence in this case is partly circumstantial, and before you would be authorized to convict the defendant, the evidence must be so cogent and strong as to exclude every reasonable hypothesis except that of guilt, and if you are not so convinced, then you should find the defendant not guilty."
This court in Cartlidge v. State, 52 Ala. App. 495, 294 So.2d 462 (1974), cert. denied, 292 Ala. 715, 294 So.2d 467, pointed out that "given" charges are to be carried into the jury room during deliberations and that "refused" charges are not given to the jury. By marking a correct charge "refused" and then "borrowing" that charge and giving it as a part of the court's oral charge, a trial court may prevent a correct statement of the law in the form of a written charge from being carried into the jury room during deliberations. This court stated in Cartlidge that "we do not sanction the practice pursued by the trial court in this case in `borrowing' appellant's two written special charges and adopting them as a part of the oral charge, and then endorsing them `refused' so they could not go out with the jury for their examination during their deliberations." Nevertheless, this court found no reversible error resulted in the trial court "borrowing" the two charges in question. That, for the reason that Title 7, § 273, Code of Ala. 1940 (now § 12-16-13, Code of Ala. 1975) provides that the refusal of a charge, though a correct statement of the law, is not cause for reversal if the same rule of law was substantially and fairly covered in the trial court's oral charge to the jury or in other requested charges given. Therefore, as to Charge 3, even though the above quoted excerpts from the trial court's oral charge are identical to the matter covered in that refused charge, no reversible error results even if it appears that the trial court may have engaged in the conduct condemned in Cartlidge, supra.
As to Charge 2, it is very likely in any given case that matter covered in requested charges may appear verbatim in a trial court's oral charge. Trial judges compile their charges to the jury based upon the case law of this state. Attorneys likewise draft their requested charges from the same source. It is a wise trial judge who compiles his oral charge verbatim from language approved in prior cases by this court and by the Alabama Supreme Court. Likewise, attorneys in attempting to bring a correct statement of the law before the jury will often go to the same cases used by the trial court to obtain language which has previously met with the approval of the appellate courts. We therefore will not indulge in any presumption that the trial court attempted to do what has been criticized in Cartlidge, supra, when the record merely shows that a refused charge happens to appear verbatim within the trial court's oral charge.

B
Secondly, appellant asserts that the trial court at the jury's request repeated its general charge on conspiracy, but erroneously omitted the matter covered in refused Charge 3. The appellant makes somewhat inconsistent allegations concerning the material in that charge. First, he contends that it was error for the trial court to "borrow" the substance of that charge in its oral charge; however, he now contends that it was error for the trial court to omit the substance of that "borrowed" charge in recharging the jury.
*389 The record unmistakably shows that the appellant did not except in any way to the supplemental oral charge to the jury. Neither did he request additional written charges to be given to the jury at that time. The appellant sat silent throughout the supplemental instruction, and for the first time on appeal contends that the supplemental charge should have included matter previously given in the court's general charge. In Childers v. State, Ala.Cr.App., 338 So.2d 1058 (1976), this court stated: "One may not object to something not in the charge and certainly not for the first time on appeal." Also see: Carter v. State, Ala.Cr. App., 356 So.2d 682, cert. denied, Ala., 356 So.2d 689 (1978).

X
After the jury returned its verdict finding the appellant guilty and fixing his punishment at death, the trial court set a date for hearing aggravating and mitigating circumstances pursuant to Act No. 213, § 3, Acts of Ala. 1975 (now § 13-11-3, Code of Ala. 1975). Following that hearing, the trial court entered its written findings of fact and the aggravating and mitigating circumstances considered in imposing the death sentence, which in pertinent part are as follows:
"It is the opinion of the court that the capital felony involved in the above styled case was committed by the nineteen year old Kelly Colley while he was engaged in or was an accomplice in the commission of robbery of James O. Counts, Jr., for pecuniary gain. Further the intentional death of James O. Counts, Jr., was especially heinous, atrocious, and cruel as these terms are understood by ordinary men and by this court. The death of James O. Counts, Jr. was unnecessary.

"Kelly Colley's participation in the corpus delicti of the intentional capital felony was with another. Participation by Kelly Colley was neither under duress nor under domination of any other person. Participation by Kelly Colley in the capital felony was significant, major and voluntary.
"The pitiless acts of Kelly Colley in the intentional capital felony were voluntary and with capacity to appreciate the criminality of his motive for unlawful pecuniary gain.
"The age of Kelly Colley is insufficient to outweigh the aggravating circumstances heretofore found to exist." (Emphasis supplied.)
That the capital felony was committed for "pecuniary gain" cannot be used as an aggravating circumstance in a capital robbery case according to our Supreme Court in Cook v. State, Ala., 369 So.2d 1251 (1978). It would in effect condemn the appellant "twice for the same culpable actstealing money." Cook requires that the case be remanded for resentencing even though the trial court found another aggravating circumstance which in itself would be sufficient to uphold the death sentence. 369 So.2d at 1256.
The trial court found that the death of the victim was "unnecessary." We do not know if such finding was used as supportive of or defining the aggravating circumstance that the crime was "especially heinous, atrocious and cruel," or whether it is listed as a separate aggravating circumstance.
In the sense that all killings are "unnecessary," that term hardly defines the term "especially heinous, atrocious and cruel." Neither does it adequately comply with the statutory requirement that the trial court "set forth in writing as the basis for the sentence of death, findings of fact from the trial and the sentence hearing, which shall at least include" the aggravating and mitigating circumstances listed in §§ 13-11-6 and 13-11-7, supra. That the killing was "unnecessary" can likewise not be used as an aggravating circumstance as it is not listed as such in § 13-11-6.
While the circumstance that the crime was especially heinous, atrocious or cruel may be a proper finding, the trial court should set out the basis of such a finding. See: Hubbard v. State, Ala.Cr. *390 App., 382 So.2d 577 (1979); Johnson v. State, Ala.Cr.App., 378 So.2d 1164 (1979); State v. Dixon, Fla., 283 So.2d 1 (1973); Alford v. State, Fla., 307 So.2d 433 (1975).
While we affirm in part, we nevertheless remand this cause to the trial court with directions to conduct another sentencing hearing in strict compliance with the mandate of the Alabama Supreme Court as enunciated in Cook v. State, supra, and to transmit a full transcript of such proceedings to this court.
AFFIRMED IN PART; REMANDED WITH DIRECTIONS.
All the Judges concur.

After Remandment
PER CURIAM.
On September 4, 1979, this court affirmed the appellant's conviction, but remanded to the trial court with directions to conduct another sentencing hearing. On October 3, 1979, the trial court complied and held such a hearing. On October 10, 1979, the trial court announced its finding of fact and pronounced sentence on the appellant, reimposing the death penalty.
The trial judge negated four mitigating circumstances, listed in § 13-11-7(4), (5), (6) and (7), Code of Ala. 1975, and found only one aggravating circumstance to exist:
"It is the opinion of the court that the capital felony involved in the above styled case was committed by Kelly Colley while he was engaged in or was an accomplice in the commission of robbery of James O. Counts, Jr. ..."
Section 13-11-6(4) lists as an aggravating circumstance that:
"The capital felony was committed while the defendant was engaged or was an accomplice in the commission of, or an attempt to commit ... robbery...."
The evidence, both at trial and on the sentencing hearing, supported the finding of that aggravating circumstance. Only one such aggravating circumstance is necessary to support the death sentence. Section 13-11-4(1), Code of Ala. 1975.
The conviction having been previously affirmed on the merits of the case, we now conclude that the sentencing hearing, findings of the trial court, and judgment are in all respects correct.
AFFIRMED.
HARRIS, P. J., and DeCARLO and BOWEN, JJ., concur.
BOOKOUT, J., dissents with opinion in which TYSON, J., joins.
BOOKOUT, Judge, dissenting:
To me, it is impermissible in a capital-robbery case to find as an aggravating circumstance that the capital felony was committed in the course of a robbery. Here, the basic crime charged is robbery, and the circumstance which elevates it to a capital felony is the intentional killing. To say that the crime of "robbery ... when the victim is intentionally killed by the defendant" is aggravated by being committed in the course of a robbery is condemning the defendant twice for the same actrobbery or stealing money. We so held in at least one case. Keller v. State, Ala.Cr.App., 380 So.2d 926 [1979].
In my opinion the same rationale expressed in Cook v. State, Ala., 369 So.2d 1251 (1979), applies to the instant circumstance. There, the Alabama Supreme Court declared that "pecuniary gain" could not be used as an aggravating circumstance where the charge is capital robbery because the defendant would be condemned twice for the same actstealing money. In other words, pecuniary gain is a circumstance of every robbery. Likewise, every capital robbery occurs during the commission or attempt to commit robbery. Since robbery or attempted robbery is an element of every capital robbery case, it could not logically be considered as an aggravating circumstance of the latter. The same reasoning is set out in my concurring opinion in Morrison v. State, Ala.Cr.App., 398 So.2d 730 [1979], and in Johnson v. State, Ala.Cr.App., 399 So.2d 859 [1979]. I likewise wrote to the same aggravating circumstance in a special concurrence in Thomas v. State, Ala. *391 Cr.App., 373 So.2d 1149, 1160 (1979) and in Bracewell v. State, Ala.Cr.App., 401 So.2d 124 [1980].
Morrison, supra, is now pending in the Alabama Supreme Court on certiorari. In Johnson, supra, the Alabama Supreme Court affirmed in part, but reversed in part and remanded with directions to this court to order a rehearing in the circuit court concerning another aggravating circumstance (Ala., 399 So.2d 873 [1979]). In Thomas, supra, the Alabama Supreme Court affirmed this court, but failed to write to the issue of whether robbery can be used as an aggravating circumstance in a capital robbery case (Ala., 373 So.2d 1167).
This issue will be squarely before the Alabama Supreme Court when it considers this case on certiorari. Assuming our prior decision on the merits to be without error, the appellant's life will depend upon the validity vel non of finding robbery to be an aggravating circumstance of capital robbery. It is hoped that our supreme court will decide this issue conclusively for the bench and bar of our state.
TYSON, J., joins in the above.

ON REHEARING
BOOKOUT, Judge.
The appellant's application for rehearing is granted only on the ground alleging that on a charge of capital robbery it is improper to consider as an aggravating circumstance that the offense was committed while the defendant was engaged in a robbery. Section 13-11-6(4), Code of Ala. 1975.
The dissenting opinion in the instant case after remandment [Ms. January 22, 1980] is hereby adopted as the majority opinion of the court.
In our original deliverance in this cause [Ms. September 4, 1979], we affirmed the appellant's conviction, but remanded to the trial court with directions to conduct another sentencing hearing. In answer to the remand, the trial court conducted such a hearing, but found only one aggravating circumstance to exist; the one in question. The trial court, through two sentencing hearings, has eliminated all aggravating circumstances except the one we have rejected today. As that finding will not support the imposition of the death sentence, and none others exist, the case must be remanded to the trial court for resentencing accordingly.
APPLICATION FOR REHEARING GRANTED.
AFFIRMED; REMANDED FOR PROPER SENTENCING.
All the Judges concur.